STATE OF NEBRASKA, APPELLEE, V. MICHAEL D. DAIL, APPELLANT.

424 N.W.2d 99

Filed May 27, 1988.    No. 87-758.

Barbara Thielen of Taylor, Fabian, Thielen & Thielen, for appellant.

Robert M. Spire, Attorney General, and Yvonne E. Gates, for appellee.

· HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

After a trial to the court, the defendant was convicted of second offense driving under the influence of alcoholic liquor and was placed on probation for 18 months. Pursuant to Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1986), he was fined $100, given credit for 1 day's jail time, and sentenced to an additional 1 day in jail, and his driver's license was suspended for 6 months.

The defendant has appealed, and his 14 assignments of error can be consolidated into 8. He alleges that the district court erred in (1) failing to sustain the plea in abatement, quash the direct information, and dismiss the case, and allowing the State to refile the charge, for the reason that a prior valid suppression order had been issued by a county court judge in a court of competent jurisdiction on the identical charge; (2) failing to find that the procedure used pursuant to Neb. Rev. Stat. § 29-827 (Reissue 1985) violated his constitutional right to due process of law; (3) failing to find that the proper remedy for the State was by way of an appeal to the district court for error on the record; (4) admitting the results of the preliminary breath test at the motion to suppress; (5) overruling the motion to suppress; (6) admitting the results of the Intoxilyzer test and the opinion testimony of the arresting officer, because of improper and insufficient foundation; (7) finding there was sufficient evidence to support a finding of guilt; and (8) denying his motion for a new trial. As to the last assigned error, since there is no separate discussion of this error in the appellant's brief, it will not be considered on appeal. *State v. Bonczynski*, 227 Neb. 203, 416 N.W.2d 508 (1987); Neb. Ct. R. of Prac. 9D(1)d (rev. 1986).

After the complaint had been filed in the county court, the

defendant filed a motion to suppress on the grounds that the arresting officer did not have probable cause to stop the defendant's vehicle or to arrest him and that any evidence obtained subsequent to the illegal stop was tainted and should be excluded at trial. After a hearing on the motion on April 14, 1987, the county court sustained the motion to suppress.

The State then moved for dismissal, pursuant to § 29-827, which provides:

> Where motions to suppress and for the return of seized property are made in courts inferior to the district court in cases involving violations of state laws, the county attorney may give notice to such court that the property in question will be further required as evidence, may then dismiss the action in such court and refile the complaint in the district court. In its order of dismissal the court shall order transfer of the property to the jurisdiction of the district court.

The county court ordered that the complaint be dismissed without prejudice and that any property in evidence be transferred to the district court.

The first issue concerns the effect of the prior suppression order on the State's right to file the charge in the district court and the district court's jurisdiction to consider a new suppression motion without regard to the findings made by the county court. In *State v. Chamley*, 223 Neb. 614, 617, 391 N.W.2d 99, 101 (1986), we held that

> the terms of § 29-827 permit the State to dismiss a charge filed against a defendant in a county court and to refile the same charge in the district court after an order of the county court has sustained a defendant's motion to suppress evidence, provided that defendant has not been placed in jeopardy at the time of the dismissal.

Under Neb. Const. art. I, § 12, jeopardy attaches when a judge, hearing a case without a jury, begins to hear evidence as to the guilt of the defendant. *State v. Chamley, supra.* In this case, as in *Chamley*, the county court had not yet begun to hear evidence as to guilt, but had merely disposed of a pretrial procedural motion. Since jeopardy had not attached when the State dismissed and refiled, the State's actions under § 29-827

were entirely proper. The district court was correct in refusing to sustain the plea in abatement, quash the direct information, and dismiss the case, and was correct in allowing the State to refile.

The defendant next contends that the procedure for refiling a case in district court under § 29-827 violates his constitutional right to due process. He first argues that it is a violation of due process to require a criminal defendant who once establishes a fourth amendment violation to have to repeat the procedure if a case is refiled. He cites *State v. Pope*, 192 Neb. 755, 224 N.W.2d 521 (1974), which held that where the legality of a search or seizure is established at a pretrial motion to suppress, the State is not obligated to relitigate the issue and again prove its legality at trial. In that case this court noted that the purpose of requiring the parties to file motions to suppress before trial is to free the trial court from determining the collateral issue of the legality of the searches during trial, and that purpose would be defeated if the State were again required to prove legality after a favorable ruling at the suppression hearing. The defendant argues that a similar rule should apply when a defendant is successful in establishing the illegality of a police procedure. While this may be true, it has nothing to do with the facts in this case.

The defendant was not required to relitigate the legality of the stop and arrest at trial. The complaint which had been filed in the county court was dismissed and refiled as a direct information in the district court. *Pope, supra*, is inapplicable.

The defendant further argues that his due process rights were violated because the procedure under § 29-827 amounts to "judge-shopping." Brief for Appellant at 32. No authority is cited for this proposition. It has been held that repetitious dismissing and refiling of charges which is designed to harass a defendant and bypass unfavorable evidentiary rulings by trying the case in front of a different judge may rise to the level of a due process violation. See, *People v Vargo*, 139 Mich. App. 573, 362 N.W.2d 840 (1984); *People v Walls*, 117 Mich. App. 691, 324 N.W.2d 136 (1982); *Stockwell v. State*, 98 Idaho 797, 573 P.2d 116 (1977). This case does not fall into that category.

The statutory procedure which the State followed in this case

is merely the method by which the State can obtain an interlocutory review of a ruling on a motion to suppress made in the county court.

Next, the defendant contends that the State's remedy for the unfavorable ruling at the county court suppression hearing is an appeal to the district court, where it must be reviewed for error on the record. The statute does not otherwise provide for an interlocutory appeal to the district court by the State from a suppression order of the county court. Section 29-827 must be read in conjunction with Neb. Rev. Stat. § 29-824 (Reissue 1985), which provides:

> In addition to any other right to appeal, the state shall have the right to appeal from an order granting a motion for the return of seized property and to suppress evidence in the manner herein provided. Where such motion has been granted in district court, the Attorney General, or the county attorney or prosecuting officer with the consent of the Attorney General, may file his or her application with the Clerk of the Supreme Court asking for a summary review of the order granting the motion.
> . . .

The statute authorizes an interlocutory appeal by the State from the sustaining of a motion to suppress only when the motion is sustained in district court. The only statute regarding an interlocutory review of a motion to suppress in county court is § 29-827.

The defendant, however, relies on two other statutes for his contention that the State does have a right of appeal. Neb. Rev. Stat. § 24-541.01 (Cum. Supp. 1986) provides in part:

> (1) Any party in a civil case and any defendant in a criminal case may appeal from the final judgment or final order of the county court to the district court of the county where the county court is located, except in cases of appeals from proceedings for the termination of parental rights in the county court sitting as a juvenile court. The same right of appeal exists in those cases in which a final judgment or final order was entered by a municipal court prior to July 1, 1985. *In a criminal case, a prosecuting attorney may obtain review by exception proceedings*

*pursuant to sections 29-2317 to 29-2319.*
(Emphasis supplied.)
Neb. Rev. Stat. § 29-2317 (Reissue 1985) provides in part:
(1) A prosecuting attorney, including any county attorney, city attorney, or designated assistant, may take exception to any ruling or decision of the county court made during the prosecution of a cause by presenting to the court a notice of intent to take an appeal to the district court with reference to the rulings or decisions of which complaint is made.

An appeal under these statutes from a suppression order in the county court would not be interlocutory and would be available in many cases only after jeopardy had attached. The State is not restricted to an appeal under § 24-541.01, but may proceed under §§ 29-827 and 29-824.

The defendant contends the district court erred in failing to sustain his motion to suppress because the arresting officer observed no violations of law prior to stopping his vehicle, and the stop was an unreasonable seizure under the fourth amendment.

In *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987), we considered the constitutionality of an officer's stopping a vehicle without probable cause to make an arrest. Therein, we stated, " '[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' " 226 Neb. at 662, 413 N.W.2d at 918-19, quoting from *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). An investigatory stop must be justified by an objective manifestation, based upon the totality of the circumstances, that the person stopped has been, is, or is about to be engaged in criminal activity. *State v. Ege*, 227 Neb. 824, 420 N.W.2d 305 (1988); *State v. Thomte, supra*. In *Thomte* we held that "a vehicle weaving in its own lane of traffic provides an articulable basis or reasonable suspicion for stopping a vehicle for investigation regarding the driver's condition in operating the weaving vehicle." 226 Neb. at 663, 413 N.W.2d at 919.

In this case the arresting officer was on routine patrol,

driving his cruiser east on Harlan Drive in Bellevue, Nebraska. At approximately 4:20 a.m. the officer observed a vehicle two or three car lengths in front of him which was also driving east. At this location Harlan Drive is a four-lane street, with a raised cement island separating the two eastbound lanes from the two westbound lanes. The two traffic lanes on either side of the cement island are separated by white painted lines. Both the officer and the vehicle he was observing were traveling in the inside lane closest to the cement island. The officer observed the vehicle move to the left toward the cement island, almost touching the center island with its driver's-side tires. The vehicle then moved to the right toward the painted lane line and drove on top of the lane line with its passenger's-side tires. The vehicle moved back to the left, again almost coming in contact with the cement island, then moved to the right, again driving on top of the white painted lines. At no time did the vehicle come in contact with the center island, and it at no time crossed the lane line into the other eastbound lane. The officer testified that the vehicle did not move from left to right rapidly, but rather it was a gradual drift from side to side. He continued to follow the vehicle for approximately 1 mile, during which time it made a proper lane change to the outside eastbound lane and then turned south onto Galvin Road. While traveling south on Galvin Road, he observed the vehicle to weave slightly within its own traffic lane. Based on these observations, the officer stopped the vehicle. This evidence was sufficient to support a finding that the investigatory stop was justified.

After stopping the vehicle, the officer observed that the defendant's eyes were bloodshot and watery, and smelled an odor of alcohol. After receiving a negative response from the defendant as to whether he suffered from any physical disabilities or impairments, the officer had the defendant perform a series of standardized field sobriety tests. Apparently, the defendant failed at least four of the tests. The officer then administered a preliminary breath test, which the defendant failed. The defendant was arrested and taken to the Bellevue Police Station, where the implied consent advisement was read to him and which he acknowledged by his signature. The defendant then submitted to a breath test on the Intoxilyzer

Model 4011AS machine, which indicated a blood alcohol content of .195 percent.

The defendant contends that the district court erred in admitting into evidence the results of the preliminary breath test during the suppression hearing for the reason that insufficient foundation had been established. Before the results of a preliminary breath test may be received, foundation evidence must establish that the requirements of Neb. Rev. Stat. § 39-669.11 (Reissue 1984) have been met, including the requirements that the method of performing the preliminary test has been approved by the Nebraska Department of Health and that the testing officer possesses a valid permit issued by the Department of Health for such purpose. *State v. Green*, 217 Neb. 70, 348 N.W.2d 429 (1984); *State v. Gerber*, 206 Neb. 75, 291 N.W.2d 403 (1980). Neb. Admin. Code tit. 177, ch. 1, § 008.05 (1986), requires that the operator perform all tests according to the checklist technique as found in attachment 4 or attachment 14.

Prior to administering the preliminary breath test, the operator is required to verify that maintenance, repair, and calibration have been performed for the testing device by reviewing the maintenance record.

The actual checklist used by the arresting officer is not contained in the record. However, the officer testified that he complied with the instructions contained in that checklist prior to administering the preliminary breath test. The officer holds a Class B permit, which permits him to administer such a test.

The findings of fact made by a trial court on a motion to suppress will not be overturned on appeal unless clearly wrong. *State v. Vrtiska*, 225 Neb. 454, 406 N.W.2d 114 (1987), *cert. denied* ____ U.S. ____, 108 S. Ct. 180, 98 L. Ed. 2d 133 (1987); *State v. Bodtke*, 219 Neb. 504, 363 N.W.2d 917 (1985).

The district court did not err in failing to sustain the motion to suppress.

The sixth assignment of error is that the district court erred in admitting into evidence the results of the Intoxilyzer test and the opinion testimony of the officer because of improper and insufficient foundation.

There are four foundational requirements that must be met

before the State may offer into evidence the results of a breath test for the purpose of establishing that a defendant was operating a motor vehicle while having ten-hundredths of 1 percent or more by weight of alcohol in his or her body fluid. The State must prove:

> (1) That the testing device or equipment was in proper working order at the time of conducting the test; (2) That the person giving and interpreting the test was properly qualified and held a valid permit issued by the Nebraska Department of Health at the time of conducting the test; (3) That the test was properly conducted in accordance with a method currently approved by the Nebraska Department of Health; and (4) That there was compliance with all statutory requirements.

*State v. Dush*, 214 Neb. 51, 53, 332 N.W.2d 679, 681-82 (1983); *State v. Bullock*, 223 Neb. 182, 388 N.W.2d 505 (1986); *State v. Gerber, supra*.

Although it is not specifically stated in his brief, the defendant apparently is alleging that the third foundational requirement was not met. Specifically, he argues that the State failed to prove that the testing device was checked within 190 days prior to the analysis and that the State failed to establish that the officer verified that the maintenance and calibration had been performed, as required by the checklist prior to the administration of each test.

Neb. Admin. Code tit. 177, ch. 1 (1986) adopted by the Nebraska Department of Health, provides at § 007.04A3 that an appropriate method for testing the breath with an Intoxilyzer Model 4011AS is found in attachment 3. This checklist form was used by the officer in administering the test and was introduced into evidence. The checklist provides that, as a preliminary step, the officer must verify that maintenance, repair, and calibration have been performed for the Intoxilyzer Model 4011AS as prescribed in § 007.06 by reviewing the maintenance record. Contrary to the defendant's assertion, the record shows that the officer performed the preliminary step and verified that maintenance and calibration had been performed. The officer testified that he checked the maintenance log and that he indicated his compliance with that

preliminary requirement by checking the appropriate box. The checklist was received in evidence and shows that box was checked.

In addition, the maintenance log itself was also received. The log establishes that the 40-day check required under § 007.06F1 was conducted on November 18, 1986, and that the 190-day check, as required under § 007.06B, was conducted on August 6, 1986. Intoxilyzer maintenance officer Raymond D. Milroy testified that he is one of the persons responsible for conducting both the 40-day test and the 190-day test, and described each of these tests. He further testified that he personally conducted the tests required by title 177, which are outlined in the maintenance log, and that the results of the tests he performed indicated that everything was operating properly. There was, therefore, sufficient foundation evidence to show that the test was conducted in accordance with a method currently approved by the Nebraska Department of Health, and the results of the Intoxilyzer test were properly admitted.

The defendant's contention that there was insufficient foundation for the arresting officer's opinion testimony that the defendant was under the influence of alcohol is without merit. The officer stated this conclusion after testifying that he had observed the defendant's car to be weaving, the defendant's eyes were bloodshot and watery, the defendant's speech was slurred, he smelled an odor of alcohol, and the defendant failed most of the standardized field sobriety tests. Further, it had been shown that the officer had been employed by the Bellevue Police Department for over 6 years, that he had received training on the apprehension and detection of intoxicated drivers, that he had made approximately 100 to 150 DWI stops, and that he has had occasion to observe the effects of alcohol on friends, relatives, and neighbors. Based on these facts, there was sufficient foundation for the officer to testify that he believed the appellant to be intoxicated.

Finally, the appellant contends that there was insufficient evidence to support a finding of guilt. As the foregoing facts show, this contention is without merit. It is not the province of this court to pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such

matters are for the finder of fact, and the finding of guilty must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Hook, ante* p. 138, 421 N.W.2d 456 (1988). The judgment of the district court is affirmed.

AFFIRMED.