STATE OF NEBRASKA, APPELLEE, V. CALVIN F. COX, APPELLANT.

523 N.W.2d 52

Filed October 18, 1994.   No. A-93-1044.

David E. Veath for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

IRWIN, MILLER-LERMAN, and MUES, Judges.

MUES, Judge.

Calvin F. Cox was originally charged in Box Butte County Court with operating a motor vehicle while under the influence of an alcoholic liquor, in violation of Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1992). Upon the county court's sustaining of Cox's motion to suppress all evidence obtained as

a result of his arrest, the county attorney dismissed the county court charge and refiled the same charge in Box Butte County District Court. Cox's motion to suppress filed in district court was overruled, he waived a jury, and he was convicted of the charge. Cox appeals from the judgment of conviction of the district court. We affirm the conviction.

## PROCEDURAL FACTS

The information was filed in the Box Butte County District Court on July 30, 1993, following the sustaining of Cox's motion to suppress by the Box Butte County Court on July 27, 1993. The county judge's order suppressed all evidence obtained as a result of the "stop and seizure" of Cox, most notable being the results of blood alcohol testing. A hearing on Cox's motion to suppress in district court was held, at which time Cox's counsel urged the court to take into consideration the ruling of the county court, arguing that the district court procedure was merely a "review hearing" to determine whether the county court decision was "clearly wrong." The district court rejected that approach and determined to handle the proceeding as an original action filed in that court. Cox's motion to suppress was overruled, and the matter proceeded to trial.

During trial, Cox objected to the admission of the blood test results. He also moved for a directed verdict at the close of the State's case. Both the objection to evidence and the motion for directed verdict were grounded on Cox's contention that certain provisions of Neb. Rev. Stat. § 29-827 (Reissue 1989) had not been complied with. The court received the test results over Cox's objection and overruled the motion for directed verdict. Cox presented evidence. During his closing statement, Cox's counsel "renew[ed]" his "Motion to Dismiss" on "jurisdictional grounds." The district court found Cox guilty of violating § 39-669.07. This appeal followed.

## FACTS

On May 7, 1993, at approximately 1:05 a.m., Officer Eric Smithgall, a police officer in Alliance, Nebraska, observed Cox's vehicle back out of a parking space and proceed southbound on Box Butte Avenue. Slightly farther south on

that road, there was a pickup truck stopped in the southbound lane. Cox claimed that as he approached the pickup, the driver motioned for him to drive around the truck. Cox passed the pickup by driving his car left of the centerline and then returned to the proper lane and continued southbound. Smithgall testified that as Cox passed the truck, he did not appear to slow down or stop, and it was Smithgall's opinion that Cox failed to use "due caution." Smithgall similarly passed the truck and continued to follow Cox's vehicle as it completed a U-turn in the road and headed back north. Smithgall observed that Cox's car was weaving in the lane and swerving side to side for approximately two blocks. At that time, Smithgall activated his overhead lights and stopped Cox's vehicle. Smithgall testified that he stopped the vehicle because he believed Cox committed a violation by driving left of the centerline, was not driving with due caution, and was swerving in his lane for two blocks.

When Smithgall approached Cox in his vehicle, he detected an odor of alcohol on Cox's breath and noticed that Cox's eyes were watery and his face was "flush." Smithgall asked Cox if he had been drinking that evening, and Cox responded by admitting that he had had a few beers. At that point, Smithgall had Cox perform several field sobriety tests, including the "Rhomberg Maneuver," the "finger to Nose/Earlobe Maneuver," and the walking "heel to toe maneuver," all of which were performed unsatisfactorily. Smithgall then conducted a preliminary breath test which resulted in a breath alcohol content reading of .174 and thereafter placed Cox under arrest for driving under the influence. Smithgall based his opinion that Cox was driving under the influence of alcohol on his visual observations, the odor of alcohol on Cox's breath, and the unsatisfactory performance of the field sobriety maneuvers. Additional field sobriety tests were administered and videotaped at the police department. Cox consented to having a blood test taken by a registered nurse at Box Butte General Hospital.

## ASSIGNMENTS OF ERROR

Cox's brief asserts seven assignments of error. We read them as essentially asserting that the district court erred (1) in

receiving evidence of Cox's body fluid alcohol content when the court was without jurisdiction of said property because there was no order from the county court transferring the property to the jurisdiction of the district court, pursuant to § 29-827; (2) in failing to direct a verdict or dismiss the charge for the failure of the State to prove compliance with § 29-827; (3) in failing to dismiss the case "on jurisdictional grounds"; and (4) in failing to sustain his motion to suppress because the arresting officer observed no violations of law prior to stopping his vehicle and was not able to articulate sufficient facts based on the totality of the circumstances to justify the investigatory stop.

## SCOPE OF REVIEW

In construing a statute, an appellate court must look at the statutory objective to be accomplished, the problem to be remedied, or purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. *State v. Seaman*, 237 Neb. 916, 468 N.W.2d 121 (1991).

It is well established that a motion for directed verdict is properly granted only when there is a complete failure of evidence to establish an essential element of the crime charged or evidence is so doubtful in character, lacking in probative value, that a finding of guilt cannot be supported by the evidence. See, e.g., *State v. Filkin*, 242 Neb. 276, 494 N.W.2d 544 (1993).

In determining the correctness of a trial court's ruling on a motion to suppress, this court will uphold a trial court's findings of fact unless those findings are clearly erroneous. *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994); *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992); *State v. Thomas*, 240 Neb. 545, 483 N.W.2d 527 (1992). In deciding whether the trial court's findings on a motion to suppress are clearly erroneous, the reviewing court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witnesses testifying regarding the motion. *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992); *State v. Melton*, 239 Neb. 790, 478 N.W.2d 341 (1992).

ANALYSIS

*§ 29-827.*

Cox's first three assignments of error are based upon § 29-827, which provides:

> Where motions to suppress and for the return of seized property are made in courts inferior to the district court in cases involving violations of state laws, the county attorney may give notice to such court that the property in question will be further required as evidence, may then dismiss the action in such court and refile the complaint in the district court. *In its order of dismissal the court shall order transfer of the property to the jurisdiction of the district court.*

(Emphasis supplied.) It is the last sentence of this statute upon which Cox relies to support these assignments of error. His argument, as we understand it, is that there was no showing in the district court that the county court had entered an order transferring "the property" to the jurisdiction of the district court. In this case, the property includes the blood test results. Cox argues that without proof of the order from county court, the district court was "without jurisdiction" over the blood test results, and therefore, the blood test results, over which the court did not have jurisdiction, could not be received into evidence. Brief for appellant at 11. Cox concludes that in the absence of those test results, the State failed to prove its case against him, and moreover, the district court did not have jurisdiction to hear and determine the State's case.

As a preface to our analysis, we note that the record before us does not contain a county court complaint charging Cox with violation of § 39-669.07, the motion of the State to dismiss that charge, or the order of the county court dismissing it. However, it is clear from comments made during trial by both the county attorney and Cox's counsel that this is what occurred. The record does contain an order of the county court of July 27, 1993, sustaining Cox's motion to suppress made in that court. Cox does not argue on appeal that jeopardy had attached before the dismissal in county court. We proceed, then, on the basis that, as in *State v. Dail*, 228 Neb. 653, 424 N.W.2d 99 (1988), the State moved to dismiss the county court charge

before jeopardy attached and refiled the same charge against Cox in district court. The county court's order of dismissal is not before us, and thus, we have no record that, in fact, the county court did not issue an order transferring the "property" in this case to the jurisdiction of the district court. Since support for Cox's assigned errors depends upon the language of such an order, we are inclined to summarily dispose of these errors under the well-known principle that it is incumbent upon the party appealing to present a record which supports the errors assigned and that absent such a record, as a general rule, the decision of the lower court is to be affirmed. *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994). However, since the assigned errors contend that it was the State's burden to prove that an order transferring the property was entered as a prerequisite to admitting the blood test results into evidence and as an element necessary to the State's case and to the jurisdiction of the district court, we will address the assignments under the assumption that no such order was entered.

Before engaging in a specific discussion of each of Cox's assignments of error that rely upon § 29-827, we believe a review of the effect and purpose of that statute is helpful. On its face, this statute allows a county attorney to dismiss actions originally filed "in courts inferior to the district court," i.e., in county courts, and to refile the complaint in district court "[w]here motions to suppress and for the return of seized property are made" in inferior courts. The Nebraska Supreme Court has held that this statute permits the State to dismiss a charge filed against a defendant in a county court and to refile the same charge in district court after an order of the county court has sustained the defendant's motion to suppress evidence, provided that the defendant has not been placed in jeopardy at the time of the dismissal. *State v. Chamley*, 223 Neb. 614, 391 N.W.2d 99 (1986). In so doing, however, the *Chamley* court emphasized that this statute does not define an appeal procedure, but is merely a codification of the right of the State to dismiss a charge and refile it, in the same court, or another, provided jeopardy has not attached.

In *State v. Dail*, 228 Neb. at 657, 424 N.W.2d at 102, the Supreme Court characterized this statute as permitting the

State to obtain an "interlocutory review of a ruling on a motion to suppress" which has been sustained in an inferior court. In *Dail*, the Supreme Court recognized that there was a specific statutory procedure which allowed for an interlocutory review of decisions of the *district* court sustaining a defendant's motion to suppress, but that this statute did not apply to a county court's sustaining of such a motion, and that § 29-827 was the only statute addressing such interlocutory review of a motion to suppress in county court.

Thus, the interlocutory review envisioned by § 29-827 does not involve an *appeal* to the district court from the county court's ruling on the motion to suppress, but, rather, anticipates the total dismissal of the county court charges, provided jeopardy has not attached, and refiling the case in district court. At that point, if the defendant desires to file another motion to suppress, it will be determined in the district court independent of the county court's findings. As clarified in *State v. Dail, supra*, the State is not restricted to awaiting a final judgment or final order of the county court and then appealing under Neb. Rev. Stat. § 24-541.01 (Cum. Supp. 1986) (currently Neb. Rev. Stat. § 25-2728 (Cum. Supp. 1992)), but may proceed, in such circumstances, under § 29-827, provided jeopardy has not attached. Although this procedure is not technically an *appeal* procedure such as the one provided for in Neb. Rev. Stat. § 29-824 (Cum. Supp. 1992), where a motion to suppress evidence has been granted in *district* court and an appeal is taken to a judge of the Court of Appeals, the practical effect of the procedure, as interpreted in *Chamley* and *Dail*, is to avoid the time and expense of obtaining a final order in the inferior court and then appealing the ruling on the motion to suppress to the district court, thus allowing the district court to directly rule on the issues involved in the motion to suppress, provided the defendant chooses to file another such motion in district court. To that extent, it does operate as an "interlocutory review" of the county court's ruling on the motion to suppress. An important factor to keep in mind, however, is the statement in *Chamley* that, in substance, § 29-827 merely "codifies the State's right" to dismiss any charge without prejudice and refile such charge, either in the same, or another, court, providing

that jeopardy has not attached at the time of the dismissal. 223 Neb. at 616, 391 N.W.2d at 100.

Regarding the provision in § 29-827 that the county court's order of dismissal shall contain an order transferring jurisdiction over the property involved in the criminal prosecution to the district court, the Nebraska Supreme Court has not specifically ruled on the purpose for that requirement. In construing a statute, we are bound to the rule that an appellate court must look at the statutory objective to be accomplished, the problem to be remedied, or purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose. *State v. Seaman*, 237 Neb. 916, 468 N.W.2d 121 (1991).

The Supreme Court has stated that when a court must interpret a statute that is in a series or collection all relating to a certain subject matter, these statutory components are in pari materia and may be considered conjunctively in determining the Legislature's intent. *State v. Garza*, 242 Neb. 573, 496 N.W.2d 448 (1993); *Gatewood v. Powell*, 1 Neb. App.749, 511 N.W.2d 159 (1993). A clause, paragraph, or provision in a section should be construed in connection with all other clauses, paragraphs, and provisions in the same and other sections of the statute connected therewith or relating thereto. *Enyeart v. City of Lincoln*, 136 Neb. 146, 285 N.W. 314 (1939). Finally, it is the recognized rule of statutory construction that where the same word is used repeatedly in the same act, unless the context requires otherwise, the word is to have the same meaning. *Knoell v. Huff*, 224 Neb. 90, 395 N.W.2d 749 (1986).

Section 29-827 appears in a series of Nebraska statutes on criminal procedure entitled "Part II[:] Disposition of Seized Property." Neb. Rev. Stat. §§ 29-818 to 29-829 (Reissue 1989 & Cum. Supp. 1992). This series or collection of statutes, as the title suggests, addresses various rules pertaining to the possession, control, suppression, disposition, and return of property seized in connection with a criminal proceeding. As part of this collection of statutes, it is provided that the court in which a complaint was filed, and where in connection with which complaint the property was or may be used as evidence,

"shall have exclusive jurisdiction for disposition of the property or funds and to determine rights therein, including questions respecting the title, possession, control, and disposition thereof." § 29-818. This series of statutes also contains a provision that at such time as seized property is no longer required as evidence in the prosecution of any complaint or information, "the court which has jurisdiction of such property may transfer the same to the jurisdiction of any other court" upon a showing that it is required as evidence in any prosecution in such other court. § 29-819. This statutory series also contains a section which speaks to the disposition of seized property when it is no longer required as evidence. § 29-820.

We believe that the obvious purpose of those provisions in the foregoing statutes which define which court has "jurisdiction" over the seized property is to assure safekeeping and custody of the property, as well as identifying which court has the authority, should the issue arise, to dispose of the property or funds and to determine rights therein, including questions respecting the title, possession, control, and disposition thereof. Such provisions also outline a mechanism enabling the physical transfer of seized property from one court to the other (when such a transfer is necessary) and assure accountability for the property.

Section 29-827, consistent with the above series of statutes of which it is a part, which statutes, inter alia, relate to the disposition of seized property, similarly provides that when the county attorney determines to dismiss a county court action and refile the complaint in the district court, he *may* give notice that the property in question will be further required as evidence, and the county court is to order transfer of the property to the jurisdiction of the district court. This is similar to the above-cited language of § 29-819. We construe the purpose for this requirement in § 29-827 to be the same as that for similar provisions in the other statutes in this series of which it is a part. Thus, § 29-827 is concerned with jurisdiction over the property, as distinguished from jurisdiction over the case. It provides a safeguard for the integrity of the seized property. It provides a mechanism for transfer to the district court of the "jurisdiction" over the property for purposes of disposition of

the property or determination of rights therein, should such question be presented. It enables the physical transfer of the property, should it be necessary.

We believe that such a construction harmonizes this provision of § 29-827 with the concept and purpose of "jurisdiction" over seized property as that term is used throughout this series of statutes and that such interpretation is reasonable to accomplish the objectives sought by this legislation. With this background, we will now attempt to succinctly address Cox's specific assignments of error as they relate to § 29-827.

The Nebraska Supreme Court has not ruled on the issues presented by Cox. He cites *State v. Dail*, 228 Neb. 653, 424 N.W.2d 99 (1988), in general support of his arguments, but *Dail* does not directly address these issues. Guided by general principles of law announced by the Supreme Court, we reach the conclusion that Cox's assignments of error, although novel, are without merit.

*"Jurisdictional Grounds."*

As to Cox's assignment of error that the district court should have dismissed this case on jurisdictional grounds, Cox's argument is that the issuing of the order by the county court was a necessary predicate to the district court having authority or jurisdiction to hear the case. Cox cites us to no authority for that proposition other than *State v. Dail, supra. Dail* does not hold, or even suggest, that such an order from county court is a necessity to a district court's exercise of jurisdiction over a criminal charge once filed in county court and subsequently dismissed and refiled in district court. Indeed, a district court has original jurisdiction in all matters civil and criminal except where otherwise provided. Neb. Rev. Stat. § 24-302 (Reissue 1989). A county court has concurrent original jurisdiction with the district court in any criminal matter classified as a misdemeanor. Neb. Rev. Stat. § 24-517(5) (Cum. Supp. 1992). The charge of violating § 39-669.07 is a Class W misdemeanor. Therefore, this charge could have been filed in district court to begin with.

We do not construe § 29-827 as either creating

jurisdiction in the district court or imposing an impediment to jurisdiction which it otherwise enjoys. As clarified in *State v. Chamley*, 223 Neb. 614, 391 N.W.2d 99 (1986), it merely codifies a procedure. The county court order transferring jurisdiction of property to the district court in conjunction with a county court dismissal under § 29-827 addresses jurisdiction over property, and not subject matter jurisdiction. The district court had jurisdiction over Cox's criminal proceeding. This assignment of error is rejected.

*Admissibility of Blood Test Results.*

Cox also directly presents the issue of whether the district court erred in admitting evidence of Cox's blood test results without proof that the Box Butte County Court had entered an order to transfer "the property" to the jurisdiction of the district court. That evidence came in the form of exhibit 3 and consisted of a lab report from the Nebraska Department of Health laboratories containing the results of a test performed on a sample of Cox's blood, with the results showing body fluid alcohol content at .211 grams per 100 milliliters. Obviously, the State had exhibit 3 at the district court trial, as it was physically offered into evidence.

Cox argues no grounds for the inadmissibility of this exhibit, other than the absence of the county court order. Implicit in this position is that there was insufficient foundation laid for its admission without proof that the district court had "jurisdiction" over the blood test results, i.e., "the property" as that phrase appears in § 29-827. We assume, without deciding, that exhibit 3 is "property" as that term is used in § 29-827.

Cox apparently relies on the plain language of § 29-827 and implies that a court must have jurisdiction over a piece of evidence before it is admissible as evidence. Cox cites us to no authority for this proposition, and we have found none. There is certainly no language in § 29-827 suggesting that an order of the county court transferring property to the jurisdiction of the district court has any relationship to the admissibility of such property into evidence at the district court trial. Nothing in the record before us indicates that the county attorney gave notice in the county court proceeding that "the property in question,"

here the blood test results, would be required in evidence as contemplated by the language of that statute. Presumably, that was because he did not require an order to obtain their physical custody.

Consistent with our construction of § 29-827 and the purpose of such an order within the context of this statute, we find that equating "jurisdiction" over the test results with their admissibility into evidence has no support in either law or logic. To do so would do nothing to achieve the statutory objective, and we will not read into the statute a requirement that imposes an impediment to the receipt of evidence in the absence of any language to support it. Thus, the presumed lack of a county court order transferring the "jurisdiction" over these blood test results to the district court was of no consequence to the issue of whether those blood test results were admissible into evidence in the district court. We find that the district court did not err in admitting such evidence.

*Directed Verdict and Sufficiency of Evidence.*

Cox contends that the district judge erred in overruling his motion for directed verdict made at the close of the State's case. If we understand Cox's argument, it is that the blood test results were inadmissible and, therefore, that the State had failed on its proof, or that the order of the county court transferring the results was an essential element of the State's case, and failure to prove the order required a directed verdict.

A motion for directed verdict is properly sustained only when there is a complete failure to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking in probative value, that a finding of guilt cannot be supported by the evidence. *State v. Filkin*, 242 Neb. 276, 494 N.W.2d 544 (1993). If a defendant in a criminal prosecution, upon the overruling of a motion for directed verdict, proceeds with the trial and introduces evidence, he waives the appellate right to challenge the correctness of the trial court's overruling the motion, but may challenge the sufficiency of the evidence for the defendant's conviction. *State v. Dawson*, 240 Neb. 89, 480 N.W.2d 700 (1992); *State v. Gray*, 239 Neb. 1024, 479 N.W.2d 796 (1992). Cox proceeded with the trial and offered

evidence after the district judge overruled his motion. In any event, the blood test results were admissible, as we have already determined. Moreover, the order of the county court was not an essential element of the crime charged of driving under the influence of alcohol. Cox does not otherwise challenge the sufficiency of the evidence for his conviction. This assignment of error is, therefore, without merit.

*Motion to Suppress.*

Cox also alleges that the district court erred in overruling his motion to suppress because the arresting officer observed no violations of law prior to stopping his vehicle and was not able to articulate sufficient facts based on the totality of the circumstances to justify the investigatory stop. In determining the correctness of a trial court's ruling on a motion to suppress, this court will uphold a trial court's findings of fact unless those findings are clearly erroneous.

Cox asserts that the only reason Smithgall stopped his vehicle was because he drove left of the centerline while passing another vehicle stopped in the road. This action in and of itself may not be unlawful; however, the record reflects that Smithgall based the actual stopping of Cox's vehicle upon other evidence as well. Smithgall testified that at the time of the stop, he believed the action taken by Cox in driving left of the centerline to get around the truck parked in the road was illegal, but that he also felt the vehicle was not being driven cautiously, since it failed to stop or slow down while passing the truck. As he continued to follow the vehicle, but prior to the stop, Smithgall observed the vehicle weaving in its lane and swerving from side to side. At this point, Smithgall stopped the vehicle.

The Supreme Court has previously stated that " ' "[a] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." ' " *State v. Dail*, 228 Neb. 653, 658, 424 N.W.2d 99, 103 (1988). Accord *State v. Thomte*, 226 Neb. 659, 413 N.W.2d 916 (1987). An investigatory stop must be justified by an objective manifestation, based upon the totality of the circumstances, that the person stopped has been,

is, or is about to be engaged in criminal activity. *State v. Bridge*, 234 Neb. 781, 452 N.W.2d 542 (1990); *State v. Dail, supra*; *State v. Ege*, 227 Neb. 824, 420 N.W.2d 305 (1988); *State v. Thomte, supra*. The purpose of an investigative stop is to clarify ambiguous situations. Even if it was equally probable that the vehicle or its occupants were innocent of any wrongdoing, the police must be permitted to act before their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent. *State v. Bridge, supra*.

In this case, the evidence demonstrates that Smithgall had a reasonable suspicion for stopping the vehicle. Smithgall testified that it was his opinion that the car was not being driven cautiously, and he also observed the vehicle weaving and swerving from side to side in its lane. In *State v. Thomte*, 226 Neb. at 663, 413 N.W.2d at 919, the Supreme Court stated that "a vehicle weaving in its own lane of traffic provides an articulable basis or reasonable suspicion for stopping a vehicle for investigation regarding the driver's condition in operating the weaving vehicle." See, also, *State v. Dail, supra*. The district judge was the trier of fact in connection with the motion to suppress. His ruling was not clearly erroneous. See, e.g., *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992). This assignment of error is without merit.

## CONCLUSION

The purpose of the provision of § 29-827 that an order be entered transferring property to the jurisdiction of the district court is to maintain the integrity of seized property and to empower the district court to make dispositions of the property and to determine rights therein. The district court was not asked to do either in these proceedings. Such order was not a requisite to the jurisdiction of the district court under the circumstances of this case. The district court did not err in receiving Cox's blood test results into evidence and in overruling Cox's motion for directed verdict. The district judge's decision to overrule the motion to suppress was not clearly erroneous.

AFFIRMED.