STATE OF NEBRASKA, APPELLEE, V. KELLY M. CASH, APPELLANT.

526 N.W.2d 447

Filed January 10, 1995. No. A-94-203.

Louie M. Ligouri for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

SIEVERS, Chief Judge, and HANNON and MUES, Judges.

HANNON, Judge.

Kelly M. Cash appeals her conviction for driving while intoxicated in violation of Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1992). Cash claims that the result of a test of her blood alcohol level should have been suppressed both because it was given after an improperly administered breath test and because the test was not a "chemical test" as required by statute. She further argues that the court improperly limited her counsel's cross-examination of the arresting officer. For the reasons recited below, we affirm.

## STATEMENT OF FACTS

Brian Beckman, a deputy sheriff for Nemaha County, testified that on March 25, 1993, at approximately 11:05 p.m., he was traveling north out of Auburn, Nebraska, on U.S. Highway 75 when he noticed a car being driven by Cash cross over the centerline. Beckman followed Cash's vehicle to the

Peru junction of Highways 67 and 75, where he dropped off a male transient who had been in the patrol car with Beckman. While dropping off the transient, Beckman observed Cash's car turn east onto Highway 67. Beckman then proceeded east onto Highway 67 and caught up with Cash's car. While following Cash's car, Beckman again observed the vehicle cross over the centerline and then swerve back and cross over the shoulder line on the highway. Beckman then activated his patrol car's overhead red emergency lights and attempted to stop Cash's vehicle. After the lights came on, Cash reduced her vehicle's speed to 45 miles per hour and continued driving for approximately another quarter of a mile and then pulled off onto the shoulder of the highway. After both vehicles were stopped, Beckman approached the driver's side of the vehicle and requested Cash's operator's license and vehicle registration. While checking Cash's license, he noticed the odor of alcohol emanating from within the vehicle. A second female occupant was sitting in the front passenger seat of the vehicle. After smelling the odor of alcohol, Beckman requested Cash to step from the vehicle and go back to his patrol car. When Cash was walking back to the patrol car, Beckman noticed her steadying herself by using the side of her vehicle. In the space between Cash's vehicle and the patrol car, about 5 feet, Cash staggered. Beckman again noticed that, after reaching the patrol car, Cash was using the side of the car to maintain her balance. Beckman testified that while Cash was in the patrol car, he detected an odor of alcohol coming from Cash. Beckman then requested Cash to perform a preliminary breath test. Beckman did not have Cash perform any physical field sobriety tests because she was crying and hysterical and because he did not feel that these tests would have been fair to her at that point in time. At 11:13 p.m., Cash signed a preliminary breath test advisement prearrest form. Beckman then asked permission to search Cash's vehicle, and he had her sign a form for that purpose at 11:17 p.m. After Cash signed the search form, Beckman left Cash in his patrol car and proceeded to search the vehicle Cash had been driving. After finding no alcohol or other contraband in the vehicle, Beckman proceeded back to his patrol car and had Cash submit to a preliminary breath test at around

11:29 p.m., 16 minutes after Cash signed the preliminary breath test form. After Cash failed the breath test, Beckman placed her under arrest for driving while intoxicated. Beckman then transported Cash to Nemaha County Hospital in Auburn, Nebraska, so that a blood test could be performed on Cash as prescribed under Neb. Rev. Stat. § 39-669.08(4) (Cum. Supp. 1992). Blood was drawn from Cash at 12:30 a.m. on March 26, 1993, and the test results showed Cash to have a body fluid alcohol content of .141. Finally, Beckman testified that in his opinion, Cash "was under the influence enough to impair her ability to operate a motor vehicle."

## ASSIGNMENTS OF ERROR

Cash alleges that the trial court erred in the following ways: (1) in overruling her motion to suppress and in admitting evidence of the results of any purported chemical test of Cash's blood; (2) in admitting into evidence the results of a purported chemical test or tests of Cash's blood without proof of compliance with all statutory requirements; (3) in permitting the arresting officer to express his opinion, without a sound and proper basis, as to whether Cash was intoxicated; and (4) in violating Cash's constitutional rights by unduly limiting the cross-examination of Beckman.

## STANDARD OF REVIEW

Findings of fact by the trial court on a motion to suppress will not be overturned on appeal unless clearly wrong. *State v. Thompson*, 244 Neb. 189, 505 N.W.2d 673 (1993); *State v. Hicks*, 241 Neb. 357, 488 N.W.2d 359 (1992). In deciding whether the trial court's findings on a motion to suppress are clearly erroneous, the reviewing court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed the witness testifying regarding the motion. *Thompson, supra*; *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992).

The trial court is given wide discretion in determining whether or not a lay witness' qualification to state an opinion has been established, and such discretion will not be disturbed on appeal unless there is an abuse of that discretion. *Schmidt v. J. C. Robinson Seed Co.*, 220 Neb. 344, 370 N.W.2d 103 (1985);

*Northern Nat. Gas Co. v. Beech Aircraft Corp.*, 202 Neb. 300, 275 N.W.2d 77 (1979).

## ADMISSIBILITY OF BLOOD TEST

Cash argues that the chemical blood test results should have been suppressed for the following two reasons: (1) The statutory requirements were not properly followed in that the breath test given before the blood test was not properly administered, and (2) the blood test that was performed was not a chemical test and thus not a test allowed under Neb. Rev. Stat. § 39-669.11 (Cum. Supp. 1992).

*Validity of Breath Test.*

Cash argues that the preliminary breath test was not performed in accordance with the methods prescribed by the state Department of Health and that therefore the blood test that was administered after the breath test was not admissible in evidence. We will first consider whether the breath test was properly administered.

A checklist used by Beckman contained the method for administering a preliminary breath test as prescribed by 177 Neb. Admin. Code, ch. 1 (1993), adopted by the Department of Health. One of the steps on this checklist reads as follows: "Observe subject for 15 minutes prior to testing." Cash alleges that Beckman failed to observe her for the required 15-minute period before administering the test. Cash states that during the 15-minute observation period, Beckman was searching her car and not "directly" observing her. Thus, Cash argues that since the preliminary test was not performed in accordance with the Department of Health test guidelines, the results should be vitiated, which would make the subsequent blood test inadmissible.

To start, we determine what the word "observe" means in relation to the relevant statutes and guidelines involved in this case. Observe is not defined in Neb. Rev. Stat. § 39-669 et seq. (Reissue 1988 & Cum. Supp. 1992) or in the Department of Health test guidelines. It also has not been interpreted by Nebraska case law that we could find. Other jurisdictions have interpreted the word "observe" as used in similar drunk driving statutes to determine its meaning and scope.

■ In *State v. Smith*, 16 Conn. App. 156, 164, 547 A.2d 69, 73 (1988), the court held that a regulation requiring " 'continuous observation' must be interpreted with reference to the purpose of the regulation." The Connecticut court concluded it was sufficient for the officer to be present for at least 15 minutes and be able to determine if the person ingested food or beverages, regurgitated, or smoked. Other jurisdictions have come to the same conclusion that when an officer is required to observe a person before administering a test, the officer need not stare fixedly at the person being tested for the specified period of time in order to satisfy the observation requirement, but must remain in the person's presence and be aware of the person's conduct. See, *State v. Remsburg*, 126 Idaho 338, 882 P.2d 993 (Idaho App. 1994); *Goode v. State*, 303 Ark. 609, 798 S.W.2d 430 (1990); *State v. St. Jean*, 554 A.2d 206 (R.I. 1989); *Gilbreath v. Municipality of Anchorage*, 773 P.2d 218 (Alaska App. 1989); *Tipton v. Com.*, 770 S.W.2d 239 (Ky. App. 1989); *State v. Taylor*, 781 S.W.2d 551 (Mo. App. 1989); *Simpson v. State*, 707 P.2d 43 (Okla. Crim. App. 1985).

The evidence in this case shows that Beckman left Cash alone in the patrol car and went to her car to conduct a search. The State admits Beckman did not observe Cash as required. The breath test given to Cash was clearly not properly administered in accordance with methods approved by the Department of Health as required under § 39-669.11(2) and therefore is not competent evidence under § 39-669.11(1). Since the breath test was not offered or received into evidence, we do not discuss or consider whether that breath test would be otherwise admissible.

*Result of Improperly Administered Preliminary Breath Test.*

Cash does not maintain the blood test per se was incorrectly administered. Rather, in summary, she argues that under §§ 39-669.08(3) and 39-669.14, a properly conducted preliminary breath test is a condition precedent to a chemical test of the breath, blood, or urine.

The pertinent part of § 39-669.08 reads as follows:

(2) Any law enforcement officer who has been duly authorized to make arrests for violations of traffic laws of

this state or of ordinances of any city or village may require any person arrested for any offense arising out of acts alleged to have been committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs to submit to a chemical test or tests of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol or the presence of drugs in such blood, breath, or urine when the officer *has reasonable grounds to believe that such person was driving or was in the actual physical control of a motor vehicle in this state while under the influence of alcoholic liquor* or drugs in violation of section 39-669.07.

(3) Any law enforcement officer who has been duly authorized to make arrests for violation of traffic laws of this state or ordinances of any city or village *may* require any person who operates or has in his or her actual physical control a motor vehicle in this state to submit to a preliminary test of his or her breath for alcohol concentration if the officer *has reasonable grounds to believe that such person has alcohol in his or her body, has committed a moving traffic violation, or has been involved in a traffic accident.*

(Emphasis supplied.)

Cash bases her argument on the above statute and § 39-669.14, which reads in part as follows:

Any person arrested for any offense involving the operation or actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs shall be required to submit to a chemical test or tests of his or her blood, breath, or urine as provided in section 39-669.08 *without the preliminary breath test* if the arresting officer does not have available the necessary equipment for administering a breath test or if the person is unconscious or is otherwise in a condition rendering him or her incapable of testing by a preliminary breath test.

(Emphasis supplied.)

In evaluating the statutory interpretation of §§ 39-669.08 and 39-669.14, we follow the reasoning laid out by the Supreme

Court in *State v. Orosco*, 199 Neb. 532, 260 N.W.2d 303 (1977). In *Orosco*, the court analyzed whether a preliminary breath test was a prerequisite to an arrest under "section 39-669.08, R. R. S. 1943" and "section 39-669.14, R. S. Supp., 1976." 199 Neb. at 539, 260 N.W.2d at 308.

The emphasis in §§ 39-669.08 and 39-669.14 above implies that a preliminary breath test is a prerequisite to a blood test, otherwise it would not be necessary to have this exception. The Supreme Court's analysis of these statutes stated the following:

> It is clear enough that section 39-669.08, R. R. S. 1943, makes *no requirement that a preliminary breath test be offered as a condition precedent to arrest.* Taken by itself, section 39-669.08, R. R. S. 1943, is perfectly clear. An ambiguity or conflict arises only because of the implication from the recital contained in section 39-669.14, R. S. Supp., 1976. . . .
>
> There is no way the conflict in the statutes can be reconciled. If effect is to be given to the recital in section 39-669.14, R. S. Supp., 1976, then we must rewrite section 39-669.08, R. R. S. 1943, to make the giving of the preliminary breath test a condition precedent to *arrest* for any offense committed while driving an automobile while under the influence of intoxicating liquor. If we are not to rewrite that section then we must disregard the recital. The legislative history of section 39-669.08 (3), R. R. S. 1943, is helpful. In discussions on the floor of the Legislature, the test was always referred to in permissive terms such as "could" or "can." It also seems equally clear that the purpose of subsection (3) authorizing the preliminary test is to give the officer an optional tool to use in determining whether to make an arrest for the violations referred to in subsection (2).

(Emphasis supplied.) 199 Neb. at 539-40, 260 N.W.2d at 308.

 If Cash's position were accepted, a valid preliminary test would be necessary for an arrest under § 39-669.08(2). In the above quote, the Supreme Court called this test "an optional tool to use in determining whether to make an arrest." An optional tool is by definition not a necessary tool. We therefore hold that a valid preliminary test is not a prerequisite

to chemical testing under § 39-669.08(2). If the officer has probable cause to arrest a suspect for violating a statute or ordinance while the suspect is under the influence of alcoholic liquor or drugs and has reasonable grounds to believe that the suspect was driving while under the influence of alcohol or drugs, that officer may arrest the suspect and require a blood test notwithstanding the fact that a preliminary breath test was not administered or was improperly administered. By administering a preliminary breath test, the officer did not make that test a prerequisite to an arrest.

*Probable Cause to Arrest.*

The preliminary breath test was administered before Cash was arrested. We have already concluded that this test was improperly administered and thus could not be admitted into evidence. Whether the result of an improperly administered breath test may be used as one of the pieces of information necessary to establish probable cause to arrest is an interesting question. However, under the facts in this case we do not get to that question. Later in this opinion we determine that Beckman had sufficient information to testify that in his opinion, Cash was under the influence of alcohol sufficient to impair her ability to operate a motor vehicle. The information that Beckman had as a basis for his opinion as a witness was the same information that he had at the time he arrested Cash, except for the preliminary breath test results. Since the record shows he had such information without the breath test, we need not consider whether he could have properly considered the breath test. The evidence in the record supports a finding by the trial court that Beckman had probable cause to arrest Cash without the results of the preliminary breath test. The findings of fact by the trial court on a motion to suppress will not be overturned unless clearly wrong. *State v. Thompson*, 244 Neb. 189, 505 N.W.2d 673 (1993).

*Gas Chromatography—A Chemical Test?*

Cash argues that the gas chromatography test performed on Cash's blood to determine her body fluid alcohol level is not a "chemical" test, but, rather, an electronic test. Cash further argues that electronic tests are not prescribed under § 39-669.08

and therefore are not valid. The recognition of such an argument would be a judicial determination that the science of chemistry is required to limit its techniques to 19th century test tubes and litmus paper. This argument has been advanced in many courts in other jurisdictions, and it has been universally rejected. See, *Fisher v. State,* 177 Ga. App. 465, 339 S.E.2d 744 (1986); *State v. Nichols,* 110 Idaho 823, 718 P.2d 1261 (Idaho App. 1986); *Dollar v. State,* 287 Ark. 153, 697 S.W.2d 93 (1985); *Gandara v. State,* 661 S.W.2d 749 (Tex. Crim. App. 1983); *City v. Schenck,* 63 Ohio Misc. 14, 409 N.E.2d 284 (1980). The discussion in these cases centers around the notion that a "chemical test" can be a test of a substance to determine its chemical composition, as well as a test using chemicals. The record shows that gas chromatography is a test used to determine the body fluid levels of a certain chemical—alcohol—and therefore is a chemical test.

## DEPUTY'S OPINION

The Supreme Court has held that after sufficient foundation is laid, a law enforcement officer may testify that in his or her opinion the defendant was driving while intoxicated. See *State v. Dail,* 228 Neb. 653, 424 N.W.2d 99 (1988). In *Dail,* the court stated the following with respect to an officer's opinion testimony that the defendant was under the influence of alcohol:

> The officer stated [his] conclusion after testifying that he had observed the defendant's car to be weaving, the defendant's eyes were bloodshot and watery, the defendant's speech was slurred, he smelled an odor of alcohol, and the defendant failed most of the standardized field sobriety tests. Further, it had been shown that the officer had been employed by the Bellevue Police Department for over 6 years, that he had received training on the apprehension and detection of intoxicated drivers, that he had made approximately 100 to 150 DWI stops, and that he has had occasion to observe the effects of alcohol on friends, relatives, and neighbors. Based on these facts, there was sufficient foundation for the officer to testify that he believed the appellant to be intoxicated.

*Id*. at 662, 424 N.W.2d at 105.

Similarly, in the case at hand, Beckman testified that he observed Cash's vehicle cross over the centerline on two occasions and the shoulder line on one occasion, he observed Cash use both vehicles to steady her balance as she walked back to the patrol car, he observed Cash stagger as she walked in between the vehicles on her approach to the patrol car, and he detected the smell of alcohol emanating from Cash. He further testified that he had been employed by the Nemaha County sheriff's office for 2 years, he had received training with regard to investigating alcohol-related offenses, he had observed others drink to the point of intoxication, and he had performed 100 to 150 alcohol-related investigations.

In *Schmidt v. J. C. Robinson Seed Co.*, 220 Neb. 344, 370 N.W.2d 103 (1985), the trial court allowed opinion testimony into evidence under Neb. Evid. R. 701. In that case, there was a great deal of disagreement over whether shattercane had infested fertile female corn in the field, making the corn unusable as seed corn because detasseling was unfeasible. The trial court allowed opinion testimony of two witnesses who stated that the corn could have been detasseled. The foundation for the testimony was based on the witnesses' personal farming experience in raising seed corn, their dealing with shattercane, and their observations of the field in question. The court held that it was within the trial court's discretion to determine if there was sufficient foundation for a witness to give his or her opinion about an issue in question.

Thus, we hold that based on the facts contained in the record, there was sufficient foundation for Beckman to testify that in his opinion, Cash was under the influence of alcohol sufficient to impair her ability to operate a motor vehicle.

## COURT'S LIMIT ON CROSS-EXAMINATION

During cross-examination, Beckman was asked whether he would still hold the opinion that Cash was under the influence of alcohol if she had passed the field sobriety test involving the raising of one leg perfectly. The objection to this testimony was sustained. The defendant made an offer of proof by the question-and-answer method that if Beckman were allowed to

testify, he would still have the same opinion even if Cash had passed a variety of field sobriety tests. Cash maintains that this evidence relates to Beckman's credibility in testifying that Cash was under the influence and that said evidence should have been admitted and considered by the court. Thus, Cash argues that this impermissibility limited her right to cross-examine Beckman to show his lack of credibility.

The offer of proof has Beckman testifying on the basis of facts not in evidence, that is, Cash passing field sobriety tests that were not administered to her. Obviously, there was no hope that such assumed evidence could be established. The question is whether a hypothetical question that assumes facts not in evidence may be asked of an expert witness on cross-examination. Generally, the authorities disagree about whether, on cross-examination, an expert may be asked questions that assume facts which are not in evidence. See Annot., Propriety of Hypothetical Question to Expert Witness on Cross-Examination, 71 A.L.R.2d 6 et seq. (1960). This annotation cites and discusses cases from some states which hold that such questions may not assume facts not in evidence, some which hold that the questions may assume facts not in evidence, some which hold that the question may assume facts not in evidence only if the purpose of the question is to test the qualification of the expert or the accuracy of the expert's opinion, and still other jurisdictions which hold that the trial court has the discretion to allow or not allow such questions. The cases cited in this annotation were generally decided before uniform rules of evidence were widely adopted.

■ The closest and most recent case discussing this issue in Nebraska is *Bengtson v. Bengtson*, 204 Neb. 602, 284 N.W.2d 406 (1979). In *Bengtson*, the appellant asked the appellee's expert what effect a second parental breakup might have upon the parties' child. There was no evidence that the appellee and his new companion would break up, and therefore the question was completely hypothetical. In that case, the Supreme Court said:

> The line was drawn by the court at the place determined by it to prohibit Mr. Nanos from relating matters only involving speculation, possibility, or conjecture. In

dealing with questions calling for expert opinion, particularly hypothetical questions, much must be left to the discretion of the trial judge.

*Id.* at 606, 284 N.W.2d at 409. The court held that the ruling was appropriate and not an abuse of discretion.

The facts in *Bengtson* can be distinguished from those in the case at hand in that the purpose of the hypothetical question in *Bengtson* was to develop evidence as to the effect of the father's future conduct relating to the child if the father were awarded custody. The court's discretion in *Bengtson* is based on the court's discretion to control the examination of expert witnesses under Neb. Rev. Stat. § 27-701 et seq. (Reissue 1989).

In the case at hand, the only purpose for the offered line of inquiry would be to test the believability of the witness. That type of inquiry is controlled by Neb. Rev. Stat. § 27-611 (Reissue 1989), which provides "[t]he judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence . . . ." In the absence of an abuse of discretion, a trial court's ruling regarding the extent, scope, and course of cross-examination will be upheld on appeal. *State v. Blair*, 230 Neb. 775, 433 N.W.2d 518 (1988). We conclude that the trial court has the discretion to prevent the cross-examination of an expert witness that incorporates questions that assume facts not in evidence even when the purpose of that examination is to test the qualification or accuracy of the witness. The record shows that Cash's attorney was allowed adequate freedom to develop weaknesses in Beckman's testimony. We hold that the trial court did not abuse its discretion by not permitting the defendant's counsel to ask hypothetical questions assuming facts not in evidence.

Therefore, we hold that the judgment of the district court in affirming the county court's conviction under § 39-669.07 was correct and is affirmed.

AFFIRMED.