IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ROTHENBERGER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DOUGLAS ROTHENBERGER, APPELLANT.

Filed December 15, 2015.   No. A-14-1160.

Appeal from the District Court for Scotts Bluff County: LEO DOBROVOLNY, Judge, on appeal thereto from the County Court for Scotts Bluff County, JAMES M. WORDEN, Judge. Judgment of the District Court affirmed.

Bell Island, of Island & Huff, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

Douglas Rothenberger was convicted of refusing to submit to a chemical test, first offense, in the county court for Scotts Bluff County, Nebraska. He appealed his conviction to the district court for Scotts Bluff County, which affirmed. Rothenberger now appeals to this court, contending his conviction should be reversed because the county court erred in (1) overruling his motion to suppress after determining there was probable cause for his arrest, (2) failing to direct a verdict in his favor, and (3) refusing to give his proposed jury instructions. We affirm.

BACKGROUND

The record before us does not contain the original complaint filed against Rothenberger. On July 9, 2013, the State filed a two-count amended complaint charging Rothenberger with driving under the influence of drugs or alcohol (DUI), second offense, in violation of Neb. Rev.

- 1 -

Stat. § 60-6,196 (Reissue 2010) (count I), and refusing to submit to a chemical test in violation of Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2014) (count II). Both charges were Class W misdemeanors, Neb. Rev. Stat. § 60-6,197.03 (Cum. Supp. 2014), and arose out of events that occurred "on or about June 18, 2013," in Scotts Bluff County, Nebraska.

On January 16, 2014, Rothenberger filed a motion to suppress evidence, arguing that his "stop, seizure, and arrest" were unconstitutional because they were conducted without a warrant and "not based on reasonable and articulable suspicion that a crime had been committed or was about to be committed." A suppression hearing took place on February 3, 2014.

At the suppression hearing, witness Chad Leeling testified as follows. Between 12:30 and 1 a.m. on June 19, 2013, he was driving east on Highway 92 from Scottsbluff, Nebraska, to Minatare, Nebraska. He came upon a station wagon that was fluctuating between 15 and 60 m.p.h. and swerving. After the station wagon entered the opposing lane of traffic, causing an oncoming car to enter Leeling's lane, Leeling called 911. The dispatcher asked Leeling to follow the station wagon until an officer arrived.

Leeling testified he followed the station wagon to the Pink Palace in Melbeta, Nebraska, but it was closed. The station wagon stopped in front of the Pink Palace, then turned around and proceeded westbound on Highway 92, toward Scottsbluff. Outside of Melbeta, an officer arrived and pulled over the station wagon.

Deputy Jared Shepard of the Scotts Bluff County sheriff's office testified that while working the night shift between June 18 and 19, 2013, he responded to a dispatch about a citizen concerned about another driver. The deputy drove to the east side of Melbeta, where he observed two vehicles traveling westbound on Highway 92. He began following one of the vehicles, an older station wagon, which matched the description given in the dispatch. The station wagon was traveling under the speed limit "by a significant amount" and swerving. Shepard observed the station wagon's passenger-side tires touch the fog line twice and its driver-side tires cross the center line twice. He estimated the driver-side tires crossed two feet over the center line.

Deputy Shepard activated his emergency lights, which caused no response from the station wagon. After approximately a quarter of a mile, the deputy sounded his siren, at which time the station wagon's turn signal activated. After approximately another quarter of a mile, the station wagon pulled onto the shoulder.

Deputy Shepard approached the station wagon and requested a driver's license, registration, and proof of insurance. The driver, whom the deputy identified as Rothenberger, had trouble getting his window down or opening the door. It was discovered the transmission was still in "drive." After the transmission was shifted to "park," Rothenberger was able to open the door and supply Deputy Shepard with a Texas driver's license.

Deputy Shepard again asked for proof of insurance and registration. Rothenberger told the deputy the registration was in the backseat, so the deputy allowed Rothenberger to exit the vehicle and look for it. According to the deputy, Rothenberger had slow and slurred speech and difficulty multitasking. In addition, when Rothenberger exited the vehicle, he had a hard time standing and maintaining his balance. Eventually, Rothenberger produced his registration, but no proof of insurance. This took "quite some time." Deputy Shepard did not smell alcohol on Rothenberger's breath.

Deputy Shepard testified he then performed standard field sobriety tests on Rothenberger. The first was the horizontal gaze nystagmus test, which revealed slight nystagmus at maximum deviation, but no nystagmus during smooth pursuit. He then performed the 9-step walk-and-turn test. As the deputy gave Rothenberger instructions for the test, Rothenberger was unable to keep his balance. He then missed the heal-to-toe on the first step, stepped off the line, and raised his arms. Deputy Shepard next performed the one-leg-stand test. Rothenberger raised his right foot and began swaying; he put his foot down within the first two seconds of the test. The deputy, who was trained in the performance of standard field sobriety tests, stated that Rothenberger's performance indicated possible impairment. Following the field sobriety tests, the deputy performed a preliminary breath test (PBT), the result of which was negative for alcohol.

According to Deputy Shepard, while still on the scene with Rothenberger, he was informed by dispatch that Rothenberger's license had been suspended or revoked. He placed Rothenberger under arrest for driving with a suspended license and transported him to the sheriff's office for evaluation by a drug recognition expert (DRE). According to the deputy, Rothenberger was arrested for DUI based on the results of the evaluation by the DRE at the sheriff's office. Deputy Shepard testified he was not a certified DRE.

On cross-examination, Deputy Shepard testified that after performing the field sobriety tests and a PBT, he had a discussion with Deputy Chitwood about whether to take Rothenberger to the hospital or to take him for evaluation by a DRE. At that point, the deputy had been informed that Rothenberger's license had been suspended or revoked. Defense counsel then asked the deputy, "And so you just arrested him for [driving with a suspended license] and then figured you'd sort the rest of it out later, right?," to which the deputy responded, "That's correct."

Following Deputy Shepard's testimony, the parties stipulated that Rothenberger's Nebraska driver's license was expired at the time of his arrest. The State rested, and Rothenberger testified on his own behalf that he had a valid Texas driver's license at the time of the incident. According to Rothenberger, he was working in Nebraska at the time but intended to return to Texas.

The court took the motion to suppress under advisement and issued a written order denying the motion on February 18, 2014. It found that based on the totality of the circumstances, the deputy had probable cause to arrest Rothenberger for DUI. The court found the record was "replete with evidence" that would lead a reasonable officer to believe Rothenberger was impaired.

A jury trial was held on May 6, 2014. At the commencement of trial, Rothenberger renewed his motion to suppress, which the court denied. Also at the commencement of trial, the court granted defense counsel's motion in limine to exclude expert testimony from the certified DRE who evaluated Rothenberger at the sheriff's office; the DRE was permitted to testify to his observations of Rothenberger, but not to provide expert testimony (the reason was that without a completed chemical urine test, the DRE's evaluation was incomplete under the DRE protocol).

The State's first witness was Leeling, who testified consistently with his testimony at the suppression hearing. Leeling clarified that as he followed the station wagon, it swerved so much that it crossed the fog lines on both sides of the road.

The majority of Deputy Shepard's testimony also was consistent with his testimony at the suppression hearing. At trial, he further testified that during his interaction with Rothenberger, he

asked him if he had taken any medication, and Rothenberger informed the deputy he had taken Suboxone at approximately 8 a.m. the prior morning, June 18, 2014. According to the deputy, Rothenberger never asked for medical help and never gave any indication he was sick or injured. In addition, Deputy Shepard testified that when he placed Rothenberger under arrest, it was for suspicion of DUI and driving with a suspended license. The video from Deputy Shepard's patrol car camera depicting his traffic stop of Rothenberger was admitted into evidence and portions were played for the jury.

Sergeant Jeff Chitwood of the Scotts Bluff County sheriff's office testified he provided backup to Deputy Shepard during his traffic stop of Rothenberger. Sergeant Chitwood testified that Rothenberger told the officers he had taken Suboxone at 10 a.m. the morning prior to his arrest. The sergeant further testified that Rothenberger was unable to maintain his balance without holding onto either his vehicle or the patrol car. At one point, Rothenberger lost his balance and started drifting toward the "barrow pit," and Deputy Shepard caught him. At another time, Rothenberger lost his balance and looked like he was going to fall into the roadway. According to the sergeant, he and Deputy Shepard questioned Rothenberger to ascertain if they "had an impairment case or a medical case," but nothing indicated Rothenberger was suffering from a medical condition; Rothenberger never asked for medical help, indicated he suffered from a physical illness, or requested to be taken to a hospital.

The State's final witness was Sergeant Mark Bliss of the Scotts Bluff County sheriff's office, who testified he was a certified DRE and described his interactions with Rothenberger at the sheriff's office following Rothenberger's arrest. Sergeant Bliss testified he performed a number of sobriety tests on Rothenberger, which Rothenberger failed or was unable to complete for safety reasons because he kept losing his balance. Following the sobriety testing, the sergeant read a post-arrest chemical test advisement form to Rothenberger and requested that he take a chemical urine test, but Rothenberger declined. The advisement form was admitted into evidence; it stated in pertinent part:

> You are under arrest for operating or being in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs. Pursuant to law, I am requiring you to submit to a chemical test or tests of your blood, breath, or urine to determine the concentration of alcohol or drugs in your blood, breath, or urine.
> Refusal to submit to such test or tests is a separate crime for which you may be charged.

The State rested, and defense counsel moved for a directed verdict on both counts. Regarding count I, the DUI charge, defense counsel argued that although there was evidence of impairment, there was no evidence it was caused by drugs or alcohol. Regarding count II, the charge of refusing a chemical test, defense counsel argued that under the Nebraska Administrative Code, a chemical test can detect marijuana, cocaine, amphetamine, methamphetamine, phencyclidine, or codeine. Counsel argued there was no evidence "that this was the type of chemical test that was sought."

The court granted the motion for a directed verdict as to count I but denied it as to count II. The court reasoned that although there was "clearly a ton of evidence that he was, to some

degree, incapacitated," there was no evidence that a drug caused the impairment, in part because the State presented no evidence of Suboxone's effects. As to count II, the court reasoned there was "plenty of evidence for the jury to consider the issue of refusal."

Rothenberger did not put on a defense, and the court proceeded to a jury instructions conference. Defense counsel offered two instructions, one of which stated, "A chemical test is one performed according to the method approved by the Department of Health and Human Services. The Method Approved by the Department of Health and Human Services for drug testing is set forth in title 177 NAC 7." The other instruction stated, "Drug for purposes of a chemical test means any of the following: Marijuana, cocaine, morphine, codeine, phencyclidine, amphetamine, or methamphetamine." The court declined to give either instruction.

The jury returned a verdict finding Rothenberger guilty of refusing to submit to a chemical test. The court sentenced Rothenberger to 6 months' probation, revoked his license for 60 days, and imposed a fine of $500 plus the costs of prosecution.

Rothenberger appealed to the district court, assigning as error that the county court erred in, among other things, (1) sustaining the motion to suppress, (2) failing to sustain the motion for directed verdict, and (3) failing to give the jury his proposed instructions. The district court affirmed the county court's judgment, and Rothenberger timely appeals to this court.

ASSIGNMENTS OF ERROR

Rothenberger assigns, restated, that the district court erroneously affirmed the county court's judgment, because the county court erred in (1) determining there was probable cause for his arrest, (2) failing to direct a verdict on the charge of refusal to submit to a chemical test, and (3) refusing to give his proposed jury instructions. Although Rothenberger does not specifically assign that the county court erred in overruling his motion to suppress, the court determined there was probable cause for Rothenberger's arrest when overruling his motion to suppress; therefore, we interpret his first assignment of error as challenging the overruling of his motion to suppress.

STANDARD OF REVIEW

Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *State v. Avey*, 288 Neb. 233, 846 N.W.2d 662 (2014). When reviewing a judgment for error appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Scheffert*, 279 Neb. 479, 778 N.W.2d 733 (2010). Regarding historical facts, we review the trial court's findings for clear error. *Id.* But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *Id.*

In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Elseman*, 287 Neb. 134, 841 N.W.2d 225 (2014). If there is any evidence which

will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *Id.*

Whether the jury instructions given by a trial court are correct is a question of law. *State v. Armagost*, 291 Neb. 117, 864 N.W.2d 417 (2015). When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court. *Id.*

ANALYSIS

*Motion to Suppress.*

Rothenberger argues that the county court erred in determining there was probable cause for his arrest (which, as stated above, the court determined in the context of overruling Rothenberger's motion to suppress). In support, Rothenberger makes two arguments: (1) the erroneous information that Deputy Shepard received from dispatch concerning Rothenberger's Nebraska driver's license (which was expired, not suspended or revoked) could not establish probable cause to arrest; and (2) there was no probable cause to arrest for DUI because Deputy Shepard was not a certified DRE and, therefore, was unable to rule out a medical condition as the cause of Rothenberger's impairment. According to Rothenberger, "[w]here an officer does not reasonably know if a person is under the influence or suffering from some other condition, then probable cause does not exist for an arrest." Brief for appellant at 9.

The State responds that the deputy was not required to have a DRE evaluate Rothenberger to develop probable cause to arrest him for DUI. According to the State, Deputy Shepard's and Sergeant Chitwood's observations of Rothenberger's impairment, combined with their testimony that there was no indication that a medical condition was to blame, were sufficient to establish probable cause to arrest Rothenberger for DUI. Alternatively, the State argues the officers had probable cause to arrest Rothenberger for failure to have evidence of insurance.

The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government. *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014). An arrest constitutes a seizure that must be justified by probable cause to believe that a suspect has committed or is committing a crime. *Id.* Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances. *Id.* We determine whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances. *Id.* Where, as here, a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearing on the motion to suppress. *State v. Bromm*, 285 Neb. 193, 826 N.W.2d 270 (2013).

Deputy Shepard testified at trial that he arrested Rothenberger, at least in part, on suspicion of DUI, which is confirmed by the post-arrest chemical test advisement form that advised Rothenberger, "You are under arrest for [DUI]." Although Deputy Shepard testified at the suppression hearing that he arrested Rothenberger at the scene for driving with a suspended license, we can consider his testimony from both the trial and the suppression hearing. See *id.* Furthermore, an officer need not identify the correct crime when he or she arrests a suspect, as long as probable cause exists to arrest for some crime. *State v. Sassen*, 240 Neb. 773, 484 N.W.2d 469 (1992). See, also, *Devenpeck v. Alford*, 543 U.S. 146, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004)

(an "arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause"). Therefore, we may consider whether Deputy Shepard had probable cause to arrest Rothenberger for DUI despite any conflict between his testimony at trial and at the suppression hearing.

As pertinent here, § 60-6,196 makes it unlawful for a person to operate or be in actual physical control of a motor vehicle while under the influence of alcoholic liquor or of any drug. The Nebraska Supreme Court has interpreted the phrase "under the influence of alcoholic liquor or any drug" to mean "the ingestion of alcohol or drugs in an amount sufficient to impair to any appreciable degree the driver's ability to operate a motor vehicle in a prudent and cautious manner." *State v. Falcon*, 260 Neb. 119, 123, 615 N.W.2d 436, 439 (2000).

The facts suggesting that Rothenberger was too impaired to operate a motor vehicle were manifold. Leeling testified to his observations of Rothenberger's driving, including that his station wagon fluctuated between 15 and 60 m.p.h. and swerved so much it crossed the fog lines on both sides of the road, causing an oncoming car to veer into Leeling's lane. Deputy Shepard observed Rothenberger's vehicle drive under the speed limit "by a significant amount," cross the fog line twice, and cross approximately two feet over the center line. During the resulting traffic stop, Deputy Shepard observed that Rothenberger had slow, slurred speech and difficulty multitasking. Both the deputy and Sergeant Chitwood observed Rothenberger having difficulty standing or maintaining his balance. Deputy Shepard testified Rothenberger failed the walk-and-turn and one-leg-stand tests; in fact, Rothenberger could not maintain his balance while receiving instructions on the walk-and-turn test. According to Sergeant Chitwood, Rothenberger could not maintain his balance without holding onto a vehicle; at various points he almost fell into the "barrow pit" and the roadway.

There were also facts to support an objectively reasonable belief that Rothenberger's impairment resulted from his consumption of a drug. Deputy Shepard did not smell alcohol on Rothenberger's breath, and the PBT result was negative for the presence of alcohol. Both Deputy Shepard and Sergeant Chitwood testified at trial that Rothenberger told them during the traffic stop that he had taken Suboxone the morning prior to his arrest; the video played for the jury confirmed this. Furthermore, Chitwood testified that he and Deputy Shepard questioned Rothenberger to ascertain if they "had an impairment case or a medical case," but nothing indicated Rothenberger was suffering from a medical condition. According to Sergeant Chitwood, Rothenberger never asked for medical help, indicated he suffered from a physical illness, or requested to be taken to a hospital. Likewise, according to Deputy Shepard, Rothenberger never asked for medical help or gave any indication he was sick or injured.

Given these facts, we conclude there was an objectively reasonable basis for the officers to suspect Rothenberger had committed the crime of DUI. It is apparent the officers attempted to ascertain a medical cause of Rothenberger's impairment, and no indication of a medical cause arose. The fact that Deputy Shepard was not a certified DRE did not render his belief that Rothenberger had committed DUI objectively unreasonable, nor did it undermine the existence of probable cause to arrest for DUI.

Rothenberger relies on *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009), and *State v. Kellogg*, 22 Neb. App. 638, 859 N.W.2d 355 (2015), to support his contention that, in essence, no

probable cause to arrest for drug-based DUI can be found where a certified DRE has not evaluated the suspect and ruled out a medical cause of the suspect's impairment. The issue in *Daly* was whether DRE protocol was a sufficiently valid methodology under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), to support a DRE's testimony at trial on a DUI charge that, based on his observations, a suspect was under the influence of drugs. *Daly, supra*. In holding that the DRE protocol was a sufficiently valid methodology and that the DRE's testimony was admissible, the court explained that a DRE examination involves, among other things, the ruling in or out of medical conditions that could be responsible for the suspect's impairment. *Id*. However, the court did not address the role, if any, that DRE protocol may play in establishing probable cause to arrest for DUI; nor did it hold that testimony by a DRE is required to establish a defendant's guilt of drug-based DUI. Therefore, we do not believe *Daly* impacts our analysis in this case.

The second case on which Rothenberger relies, *Kellogg, supra*, is also unavailing. In that case, the issue was whether a law enforcement officer had probable cause to arrest the defendant for DUI. During a traffic stop for speeding, the arresting officer, who was a certified DRE, observed the defendant appear confused, overactive, and unable to concentrate or sit still; for example, the defendant was unable to produce her driver's license upon request, even though the officer could see the license in the defendant's wallet. The defendant also had bloodshot, glassy eyes, displayed impairment on field sobriety tests, and admitted to having taken prescription medication. After a PBT result was negative for the presence of alcohol, the officer placed the defendant under arrest for DUI.

The trial court determined there was probable cause for the arrest, and this court affirmed. This court reasoned that under the totality of the circumstances, the officer had sufficient probable cause to arrest for DUI; although the court noted the officer's "specific training with respect to drug recognition," *Id*. at 648, 859 N.W.2d at 363, the focus of this court's probable cause analysis was on the totality of the officer's observations. Nothing in the court's analysis supports Rothenberger's assertion that "it was the officer's experience with drug drivers [in *Kellogg*] that allowed him to exclude medical issues and make a probable cause determination that a crime had been committed." Brief for appellant at 10. Notably, in the analysis of probable cause, this court in *Kellogg, supra*, did not make any reference to the officer having ruled out medical conditions as the cause of the driver's impairment.

Because we conclude the county court properly determined there was probable cause to arrest Rothenberger for DUI, we need not address Rothenberger's argument that there was not probable cause to arrest him for driving with a suspended license; nor do we address the State's argument that there was probable cause to arrest for failure to have evidence of insurance. See *State v. Planck*, 289 Neb. 510, 856 N.W.2d 112 (2014) (an appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it).

*Motion for Directed Verdict*.

Rothenberger next argues the county court erred in failing to grant his motion for directed verdict on count II, the charge of refusing to submit to a chemical test. In support, Rothenberger makes two arguments: (1) there was no basis to request a chemical test because there was no

evidence he was impaired by a drug; and (2) there was no evidence he refused a "chemical test," which according to Rothenberger is one that detects marijuana, cocaine, morphine, codeine, phencyclidine, amphetamine, or methamphetamine.

Section 60-6,197(1) provides that any person who operates or has actual physical control of a motor vehicle in this state is deemed to have given his or her consent to a chemical test or tests of his or her blood, breath, or urine for the purpose of detecting alcohol or drugs. Section 60-6,197(2) provides:

> Any peace officer who has been duly authorized to make arrests for violations of traffic laws of this state or of ordinances of any city or village may require any person arrested for any offense arising out of acts alleged to have been committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs to submit to a chemical test or tests of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol or the presence of drugs in such blood, breath, or urine when the officer has reasonable grounds to believe that such person was driving or was in the actual physical control of a motor vehicle in this state while under the influence of alcoholic liquor or drugs in violation of section 60-6,196.

The person "shall be advised that refusal to submit to such test or tests is a separate crime for which the person may be charged." § 60-6,197(5). If the person refuses to submit to a properly requested chemical test, he or she is subject to license revocation and is guilty of a Class W misdemeanor or greater for subsequent offenses. §§ 60-6,197(2); 60-1,197.03.

We first address Rothenberger's argument that there was no basis to request a chemical test because there was no evidence his impairment was caused by a drug. Again, Rothenberger maintains the arresting deputy was not a certified DRE and was unqualified to rule out a medical cause of his impairment.

We have already rejected this argument. We determined above that Rothenberger was validly arrested for DUI; therefore, it was proper to request a chemical test pursuant to § 60-6,197. We further note that although Rothenberger focuses on Deputy Shepard's lack of DRE certification, the officer who actually requested the chemical test was a certified DRE. Sergeant Bliss testified he requested that Rothenberger undergo a chemical urine test after observing Rothenberger fail a number of sobriety tests. This supports the conclusion that there were reasonable grounds to believe Rothenberger had committed DUI and to request chemical testing.

Rothenberger's second argument--that he did not refuse to submit to a "chemical test"--fares no better. In support of this argument, Rothenberger cites chapter 7 of title 177 of the Nebraska Administrative Code (Code), which sets forth regulations and a permitting process for the analysis by chemical test of an individual's urine for drug content. The regulations define "[c]hemical test" as "an examination which measure's [sic] the presence of a drug by chemical reaction, or chemical detection using a laboratory instrument," and "drug" as "any of the following[:] [m]arijuana, cocaine, morphine, codeine, phencyclidine, amphetamine, or methamphetamine." 177 Neb. Admin. Code, ch. 7, §§ 001.5, 001.13 (2007).

These regulations are implemented pursuant to the charge in Neb. Rev. Stat. § 60-6,201(3) (Reissue 2010), which provides in pertinent part that, to be considered valid, "tests of blood, breath,

or urine made under section 60-6,197 . . . shall be performed according to methods approved by the Department of Health and Human Services and by an individual possessing a valid permit issued by such department for such purpose." The statute further provides that a test made in conformity with the requirements is competent evidence in any prosecution for DUI. § 60-6,201(1).

However, nothing in § 60-6,201 or in chapter 7 of title 177 of the Code says anything about a prosecution for refusal to submit to a chemical test. Notably, the Nebraska Rules of the Road do not define the word "drug," and they make it a crime to operate a motor vehicle while under the influence of "any drug." § 60-6,196(1)(a). An officer may request a post-arrest chemical test as long as the officer has reasonable grounds to believe the person committed DUI; the authority to request a chemical test is not limited to DUIs involving certain drugs. See § 60-6,197(3). A person is guilty of a crime if he or she refuses a properly requested chemical test; neither the type of drug suspected to be causing the person's impairment nor the type of chemical test to be performed is an element of the crime. See § 60-6,197(3). Therefore, Rothenberger's reliance on the Code provisions is misplaced.

Based on the foregoing, we conclude there was evidence to sustain a finding of guilt on the charge of refusing to submit to a chemical test, such that the county court properly overruled Rothenberger's motion for directed verdict on count II. See *State v. Elseman*, 287 Neb. 134, 841 N.W.2d 225 (2014) (a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained).

*Jury Instructions*.

Rothenberger's final argument is that the county court erred in refusing to give his two proposed jury instructions. Again, those instructions defined "chemical test" as "one performed according to the method approved by the Department of Health and Human Services," and defined "[d]rug for purposes of a chemical test" as "any of the following: Marijuana, cocaine, morphine, codeine, phencyclidine, amphetamine, or methamphetamine." According to Rothenberger, the proposed instructions would have directed "the jury to examine the approved methods and determine if the test met the standard." Brief for appellant at 15.

As we explained above, neither the type of drug suspected to be causing the person's impairment nor the type of chemical test to be performed is an element of the crime of refusing to submit to a chemical test. See § 60-6,197(3). Therefore, the county court did not err in declining to give Rothenberger's proposed instructions, which would have led to confusion and potentially caused the jury to base its verdict on irrelevant considerations.

## CONCLUSION

For the foregoing reasons, we affirm the district court's order which affirmed the county court's judgment.

AFFIRMED.