778 N.W.2d 733 (2010)
279 Neb. 479
STATE of Nebraska, appellee,
v.
Derek SCHEFFERT, appellant.
No. S-09-458.
Supreme Court of Nebraska.
February 26, 2010.
*736 Mark E. Rappl, Lincoln, for appellant.
Jon Bruning, Attorney General, and George R. Love, Columbus, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
MILLER-LERMAN, J.

NATURE OF CASE
Derek Scheffert appeals his conviction for driving under the influence (DUI), fourth offense. Scheffert asserts that the district court for Lancaster County erred by overruling his motion to suppress evidence obtained as a result of his arrest for DUI and his submission to a chemical breath test. He also asserts that the court erred by relying on two of his prior DUI convictions at the enhancement hearing. We affirm Scheffert's conviction and sentence for DUI, fourth offense.

STATEMENT OF FACTS
At approximately 3 a.m. on March 21, 2008, Officer Robert Brenner stopped a vehicle driven by Scheffert because Brenner saw that the passenger-side headlight on Scheffert's vehicle was not operating. After obtaining Scheffert's driver's license and other information, Brenner ran a check of Scheffert's license and learned that there was an outstanding warrant for Scheffert's arrest. Brenner returned to Scheffert's vehicle, asked Scheffert to step out of the vehicle, and arrested him based on the warrant.
Brenner asked Scheffert whether Scheffert's female passenger would be able to drive Scheffert's vehicle from the scene. Scheffert responded that she would not, because she had been drinking. Brenner noticed an odor of alcohol on Scheffert's breath and asked whether he also had been drinking. Scheffert told Brenner that he had had two beers. Brenner saw that Scheffert's eyes were "glassy, watery, and bloodshot."
Brenner handcuffed Scheffert and escorted him to the back seat of Brenner's cruiser. Brenner determined that he *737 should give Scheffert a preliminary breath test (PBT), but Brenner did not have a PBT unit in his cruiser. Brenner checked with another officer who was coming to the scene to verify that the other officer had a PBT unit with him. The other officer arrived with a PBT unit, and Brenner administered the PBT. The PBT showed a result of .147.
Based on the PBT result and his other observations, Brenner asked Scheffert to submit to a chemical breath test. Brenner read Scheffert a postarrest chemical test advisement form which informed him that, inter alia, he was "under arrest for operating or being in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs." Brenner took Scheffert to jail, where Scheffert submitted to a chemical breath test which showed that Scheffert had .149 grams of alcohol per 210 liters of breath, which was above the legal limit.
After Scheffert was charged in the district court with fourth-offense DUI, he filed a motion to suppress all evidence gathered as the result of his seizure and arrest. Scheffert asserted that Brenner did not have probable cause to require him to submit to a chemical breath test because the administration of the PBT was not sufficiently reliable for the results to support a finding of probable cause. He argued that the PBT was not reliable because Brenner did not follow regulations that require the person administering a PBT to observe the person being tested for 15 minutes prior to giving the test.
At the hearing on the motion to suppress, Brenner testified, in addition to the facts set forth above, that he observed the required 15-minute waiting period prior to administering the PBT. According to the PBT checklist completed by Brenner, his observation began at 2:50 a.m. and the breath sample was taken at 3:09 a.m. On cross-examination, Brenner testified that his sole reason for stopping Scheffert's vehicle was that the passenger headlight was not operating, that Brenner had followed the vehicle for five blocks but had not observed any poor driving behavior, and that Scheffert responded in a reasonable fashion after Brenner activated his cruiser's overhead lights and initiated the stop. Upon contact with Scheffert, Brenner did not initially notice an odor of alcohol or other indicators of alcohol impairment, such as fumbling or problems with manual dexterity or walking.
Brenner testified that the 15-minute waiting period listed on the checklist began when he returned to Scheffert's vehicle and arrested him on the warrant. After arresting Scheffert, Brenner handcuffed him and put him into the back seat of the cruiser, where Scheffert remained until the PBT was given. Brenner testified that during the time Scheffert was in the back seat prior to the test, Brenner spent some time in the front seat of the cruiser completing a citation, and that he spent a couple of minutes standing outside the cruiser waiting for the other officer to arrive with the PBT unit and talking with the other officer when he arrived. Brenner testified that while he was in the front seat, he could see Scheffert in the rearview mirror. While Brenner was outside the vehicle, the door and window were closed, and he could see Scheffert but could not necessarily hear him. Brenner testified that there were times that he was not "staring" at Scheffert but that he never turned his back to him when he was outside the vehicle.
The district court overruled the motion to suppress. The court noted first that there was no issue whether there was probable cause to arrest Scheffert based on the warrant. The only issues were *738 whether the PBT was sufficiently reliable and whether there was adequate cause for Brenner to require Scheffert to submit to the chemical breath test.
According to the district court, the salient facts were not disputed, and the court concluded that Brenner had not observed Scheffert "as the rules require." The court stated that although the PBT results were inadmissible as evidence at trial, it "does not necessarily preclude use of the information produced by the test in reaching a conclusion regarding probable cause." The court also stated that even if Brenner could not consider the PBT results in determining probable cause to require the chemical breath test, "there was sufficient probable cause to require the test based on other information." The court noted that Brenner "observed Scheffert to have the odor of alcohol about him and to have watery, bloodshot, glassy eyes." The court concluded that these factors alone established sufficient probable cause to require the chemical breath test.
The case was tried to the court on stipulated evidence. Scheffert renewed his objection to the overruling of the motion to suppress. Based on the submitted evidence, the court found Scheffert guilty of DUI.
An enhancement hearing was conducted. The record from the hearing shows that Scheffert had three prior convictions for DUI. Scheffert objected to the court's using two of the prior convictions. He asserted that the records of these two convictions failed to demonstrate that he was represented by counsel at all critical stages of the proceedings. He noted that the records for these two convictions showed that he appeared pro se at the arraignments and that he did not have either hired or appointed counsel until after the arraignments. He further noted that the records did not show that he waived counsel at the arraignments. He argued that an arraignment is a critical stage and that therefore, the State was required to show that he either had or waived counsel at that time.
The court overruled Scheffert's objection to its consideration of his prior convictions and found that Scheffert's DUI conviction was a fourth offense. The court sentenced Scheffert to intensive supervision probation for 4 years, including a 90-day jail sentence and a 15-year license revocation.
Scheffert appeals his conviction for fourth-offense DUI.

ASSIGNMENTS OF ERROR
Scheffert asserts that the district court erred by (1) over-ruling his motion to suppress based on its finding that there was sufficient probable cause to require him to submit to the chemical breath test and (2) considering two of his prior DUI convictions at the enhancement hearing because the record did not affirmatively show that he had or waived counsel at the arraignments.

STANDARDS OF REVIEW
In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. Regarding historical facts, we review the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. State v. Hedgcock, 277 Neb. 805, 765 N.W.2d 469 (2009).
When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent *739 conclusion irrespective of the decision of the court below. State v. Head, 276 Neb. 354, 754 N.W.2d 612 (2008).

ANALYSIS

The District Court Did Not Err by Overruling the Motion to Suppress Because Scheffert's Arrest for DUI Was Supported by Probable Cause and There Were Reasonable Grounds to Require a Chemical Test.
Scheffert first asserts that the district court erred by over-ruling his motion to suppress, thus admitting evidence of the chemical test. Scheffert does not argue that the stop of his vehicle was improper, nor does he dispute the district court's conclusion that there was probable cause to arrest him based on the outstanding warrant. He argues only that the court should have suppressed the results of the chemical breath test because the PBT results were not sufficiently reliable and ultimately that Brenner did not have adequate cause to require him to submit to the chemical breath test. We conclude that there was probable cause to arrest Scheffert for DUI and that reasonable grounds existed to require the chemical breath test; therefore, the court did not err by overruling Scheffert's motion to suppress.
With respect to the PBT, we note that Neb.Rev.Stat. § 60-6,197.04 (Reissue 2004) provides:
Any peace officer ... may require any person who operates or has in his or her actual physical control a motor vehicle in this state to submit to a preliminary test of his or her breath for alcohol concentration if the officer has reasonable grounds to believe that such person has alcohol in his or her body ....
Before Brenner required Scheffert to submit to the PBT, Brenner noticed an odor of alcohol on Scheffert's breath and saw that his eyes were "glassy, watery, and bloodshot," and Scheffert had told Brenner that he had had two beers. Upon observing symptoms or impaired driving, an experienced officer ordinarily has reasonable grounds to believe that such person has alcohol in his or her body, see State v. Daly, 278 Neb. 903, 775 N.W.2d 47 (2009), and therefore require such driver to submit to a PBT. Scheffert does not dispute that Brenner had "reasonable grounds" to believe that Scheffert had alcohol in his body and to therefore require him to submit to the PBT.
With respect to chemical tests, we note that Neb.Rev.Stat. § 60-6,197(2) (Reissue 2004) provides:
Any peace officer ... may require any person arrested for any offense arising out of acts alleged to have been committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs to submit to a chemical test or tests of his or her blood, breath, or urine for the purpose of determining the concentration of alcohol or the presence of drugs in such blood, breath, or urine when the officer has reasonable grounds to believe that such person was driving or was in the actual physical control of a motor vehicle in this state while under the influence of alcoholic liquor or drugs in violation of section 60-6,196.
The record shows that before requiring Scheffert to submit to the chemical test, Brenner read to him a postarrest chemical test advisement which informed him that, inter alia, he was "under arrest for operating or being in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs." Taking the evidence as a whole, it is clear that after Scheffert was arrested pursuant to the warrant, probable cause developed, and he *740 was thereafter under arrest for DUI. Because Scheffert had been arrested for DUI, under § 60-6,197(2), Brenner could require Scheffert to submit to a chemical test if Brenner had "reasonable grounds" to believe that Scheffert had been driving under the influence.
The Fourth Amendment mandates that an arrest be justified by probable cause to believe that a person has committed or is committing a crime. State v. Hedgcock, 277 Neb. 805, 765 N.W.2d 469 (2009). Therefore, in order to arrest Scheffert for DUI, Brenner needed probable cause to believe Scheffert had committed the crime, and in order to thereafter require Scheffert to submit to a chemical test under § 60-6,197(2), Brenner needed reasonable grounds to believe that Scheffert was driving under the influence. Although Scheffert's assignment of error as phrased states that there was not probable cause for a chemical test, his argument is best understood as a claim that Brenner did not have probable cause to arrest him for DUI and did not thereafter have reasonable grounds to require him to submit to a chemical test.
Scheffert argues that the PBT was not reliable and therefore should not have been considered as support for a finding of probable cause to arrest him for DUI. He asserts that without consideration of the PBT results, such probable cause was lacking. As support for these claims, Scheffert asserts that Brenner was not in a position to observe him for the entire 15-minute waiting period as required under the rules noted below and that therefore, the PBT was not reliable.
Under Neb.Rev.Stat. § 60-6,201(3) (Cum.Supp.2008), in order to be considered valid, tests made under § 60-6,197 to determine if a party has been driving under the influence must be performed according to methods approved by the Department of Health and Human Services (DHHS). At issue in this case is the PBT given under § 60-6,197.04. Prior to 2004, the substance of § 60-6,197.04 regarding PBT's was codified as part of § 60-6,197. Scheffert notes in this regard that, consistent with these statutes, 177 Neb. Admin. Code, ch. 1, § 012.03 (2004), adopted by the DHHS, approved a checklist for the use of PBT devices. The first step on the checklist states in part: "Observe the subject for 15 minutes prior to testing."
The checklist completed by Brenner in this case shows that he checked the step requiring observation for 15 minutes and wrote that the observation began at "0250" and that the sample was taken at "0309." Scheffert asserts that because Brenner did not have Scheffert directly in his sight at all times during the 15-minute observation period, Brenner failed to observe him for the requisite time under the DHHS rules. In support of his argument, Scheffert notes that Brenner stated that at times during the 15-minute period, he was standing outside the cruiser or was sitting in the front seat of the cruiser while Scheffert was sitting in the back seat.
Although the facts and hence the outcome were different from the present case, the Nebraska Court of Appeals considered an argument involving the 15-minute requirement in State v. Cash, 3 Neb.App. 319, 526 N.W.2d 447 (1995). In Cash, the Court of Appeals noted that the evidence therein showed that the officer "left [the defendant] alone in the patrol car and went to [the defendant's] car to conduct a search." 3 Neb.App. at 324, 526 N.W.2d at 451. The State in Cash conceded that the officer did not observe the defendant as required, and therefore the Court of Appeals concluded that the PBT was not administered in accordance with methods approved by the DHHS.
*741 In reaching its conclusion, the Court of Appeals noted that the word "observe" was not defined in the relevant statutes and guidelines, nor had it been interpreted in Nebraska case law in connection with such statutes and guidelines. The Court of Appeals looked to other jurisdictions that had interpreted the word "observe" in connection with similar drunk driving statutes.
The Court of Appeals stated:
Other jurisdictions have come to the ... conclusion that when an officer is required to observe a person before administering a test, the officer need not stare fixedly at the person being tested for the specified period of time in order to satisfy the observation requirement, but must remain in the person's presence and be aware of the person's conduct.
Cash, 3 Neb.App. at 324, 526 N.W.2d at 451.
We agree with the analysis of the Court of Appeals in Cash. To "observe," under the rule regarding observation prior to giving a PBT, does not require a police officer to stare fixedly at the person being tested. The officer must, however, be in a position to detect, through the use of one or more senses, any conduct or event which could contaminate the breath sample and taint the results. See, Bennett v. State, Dept. of Transp., 147 Idaho 141, 206 P.3d 505 (Idaho App.2009); State v. Filson, 409 N.J.Super. 246, 976 A.2d 460 (2009).
With these standards in mind, we note that this case was not a situation like Cash, supra, in which the officer left the suspect in the patrol car and went elsewhere to search the suspect's car. As the record shows and the district court found, Brenner did not continuously have his eyes on Scheffert; however, Brenner did not leave Scheffert's presence during the 15-minute period. Brenner was either inside or just outside the vehicle in which Scheffert was seated. Although Brenner was not constantly watching Scheffert, Brenner remained close enough to sense an event which might have occurred that could taint the results of the PBT.
Brenner testified that when he was outside the cruiser, although the doors and windows were closed, he did not turn his back on Scheffert and was therefore able to see Scheffert. Further, when Brenner was sitting in the front seat of the cruiser and Scheffert was in the back seat, Brenner testified that he was able to see Scheffert in the rearview mirror. We note that Scheffert makes no assertion that any event occurred that would have tainted the test results, and we further note that during the entire observation period, Scheffert was handcuffed, which would have limited his ability to do something that would have tainted the results of the PBT. Given the foregoing facts, we disagree with the district court's conclusion that Brenner did not observe Scheffert "as the rules require." Consequently, we reject Scheffert's argument that the PBT results were not sufficiently reliable to be considered in determining whether Brenner had probable cause to arrest Scheffert for DUI.
Nebraska case law has long held that a PBT is admissible for the limited purpose of establishing probable cause. See, State v. Baue, 258 Neb. 968, 607 N.W.2d 191 (2000); State v. Klingelhoefer, 222 Neb. 219, 382 N.W.2d 366 (1986); State v. Green, 217 Neb. 70, 348 N.W.2d 429 (1984). The results of the PBT showed Scheffert's blood alcohol level to be.147, which is above the legal limit. Such results, combined with Brenner's smelling an odor of alcohol, seeing the condition of Scheffert's eyes, and Scheffert's admission to drinking, supported a finding of probable *742 cause to arrest Scheffert for DUI. Such information also provided reasonable grounds to require Scheffert to submit to a chemical breath test after he had been arrested for DUI. See § 60-6,197(2). Although our reasoning differs from that of the district court, we conclude that the district court did not err by overruling Scheffert's motion to suppress evidence obtained as the result of his arrest for DUI and his submission to the chemical test.

Records of Scheffert's Prior Convictions Showed That Such Convictions Were Obtained In Compliance With His Right to Counsel, and Therefore Such Convictions Could Be Considered at His Enhancement Hearing.
Scheffert next asserts that the court erred by overruling his objection to consideration of two of his prior DUI convictions at the enhancement hearing. He argues that with regard to each of the two prior convictions, the record did not demonstrate that he was represented by counsel or had waived counsel at the arraignment, which he asserts is a critical stage of the proceedings. We conclude that although the right to counsel attached at the arraignment, counsel was not required at the arraignment itself, and that therefore, the court did not err by using the fact of the prior convictions to enhance Scheffert's sentence.
Under Neb.Rev.Stat. § 60-6,197.02 (Cum.Supp.2008), a court is required, as part of the judgment of conviction in a DUI case, to make a finding on the record as to the convicted person's prior DUI convictions as defined in § 60-6,197.02(1). Pursuant to § 60-6,197.02(3), "[t]he convicted person shall be given the opportunity to review the record of his or her prior convictions, bring mitigating facts to the attention of the court prior to sentencing, and make objections on the record regarding the validity of such prior convictions." We have construed the language of this section, then codified at Neb. Rev.Stat. § 60-6,196(3) (Supp.2003) and previously codified at Neb.Rev.Stat. § 39-669.07 (Reissue 1988), as permitting within limits a challenge based upon denial of the Sixth Amendment right to counsel. See State v. Louthan, 257 Neb. 174, 595 N.W.2d 917 (1999). In the context of a DUI case, we have observed that the statute "permits a defendant to challenge the validity of a prior DUI conviction offered for purposes of enhancement on the ground that it was obtained in violation of the defendant's Sixth Amendment right to counsel." Id. at 188, 595 N.W.2d at 926. Similarly, in connection with habitual criminal proceedings, we have stated that in order to use a prior conviction, the State must prove, inter alia, that "at the time of the prior conviction and sentencing, the defendant was represented by counsel or had knowingly and voluntarily waived representation for those proceedings." State v. Robinson, 272 Neb. 582, 633, 724 N.W.2d 35, 77 (2006).
In the present case, the records for the two prior convictions challenged by Scheffert showed that he was represented by counsel when he entered pleas of guilty and when he was given sentences that included time in jail. We acknowledge that the records do not show that Scheffert was represented by counsel at his arraignments in those cases.
We have stated that a criminal defendant's Sixth Amendment right to the assistance of counsel attaches only after the initiation of adversary judicial criminal proceedingswhether by way of formal charge, preliminary hearing, indictment, information, or arraignment. See State v. Lotter, 255 Neb. 456, 586 N.W.2d 591 (1998). Postattachment, the accused is entitled *743 to counsel at every critical stage of the proceeding. See id. The records from the two prior convictions in this case showed that Scheffert was represented by counsel at the critical stages that followed his arraignmentthe plea hearing and the sentencing. The issue raised by Scheffert is whether he had the right to be represented by counsel at the arraignment itself.
As noted above, the right to the assistance of counsel attaches after arraignment. The U.S. Supreme Court recently reaffirmed in Rothgery v. Gillespie County, Tex., ___ U.S. ___, 128 S.Ct. 2578, 2592, 171 L.Ed.2d 366 (2008), that "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." The Court stated in Rothgery that "[a]ttachment occurs when the government has used the judicial machinery to signal a commitment to prosecute" and that "[o]nce attachment occurs, the accused at least is entitled to the presence of appointed counsel during any `critical stage' of the postattachment proceedings." 128 S.Ct. at 2591. The Court continued, "Thus, counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself." Id.
Under Rothgery, the right to counsel attaches at an event such as an arraignment, and "attachment" means that the defendant must in a reasonable time thereafter have counsel or waive counsel at subsequent critical stages. We have also so held. Lotter, supra. The arraignment itself is not necessarily a critical stage requiring counsel.
In the present case, the records of the two prior convictions show that in the critical stages following the arraignmentsthe plea hearings and the sentencing hearingsScheffert was represented by counsel. Scheffert has not directed us to a particular reason that the arraignments in his two prior DUI cases under consideration should be excepted from the jurisprudence discussed above or that any rights were not protected by having counsel present at the subsequent critical stages. It was not required that Scheffert have counsel at the arraignments in the prior convictions, and the records show that he was represented by counsel at the critical stages that followed the arraignments. We therefore conclude that the record in this case showed the two prior convictions were counseled as required and that therefore, the two prior DUI convictions were eligible to be used to enhance the penalty in the current case. The court did not err by considering the two prior convictions at the enhancement hearing.

CONCLUSION
We conclude that the PBT was sufficiently reliable to be used to support a finding of probable cause to arrest Scheffert for DUI and that there were reasonable grounds to thereafter require a chemical test. We therefore conclude that the district court did not err by denying Scheffert's motion to suppress the results of the chemical test. We further conclude that the record relating to the two prior DUI convictions showed that such convictions were counseled as required and that therefore, the court did not err by considering such convictions at the enhancement hearing. We affirm Scheffert's conviction and sentence for DUI, fourth offense.
AFFIRMED.