*Alexander Dejarnette v. State of Maryland*, No. 2316, September Term, 2019. Opinion by Zarnoch, J.

**STATUTES – STATUTORY INTERPRETATION – COMPLIANCE WITH STATE COMAR REGULATIONS**

When interpreting a statute that acts as a statutory exclusionary rule, Maryland Code, § 10-309 of the Courts and Judicial Proceedings Article, the State must comply with the statutory requirements expressly provided in the statute. The plain language of the statute requires only compliance with statutory requirements in the subtitle. See Cts. and Jud. Proc. § 10-309. The plain language of the statute does not require strict compliance with State regulations, thus the violation of a State regulation "does not trigger the exclusionary rule." *McFarlin v. State*, 409 Md. 391, 401 (2009).

**ADMINISTRATIVE AGENCIES – SEPARATION OF POWERS -- ADMISSIBILITY OF EVIDENCE AT TRIAL**

The power of an administrative agency does not extend to determining whether evidence is admissible in court, nor could it unilaterally create an exclusionary rule in a regulation that is binding on a court.

**STATE COMAR REGULATIONS – COMPLIANCE – OBSERVATION PERIOD**

Compliance with a COMAR regulation requiring a twenty-minute observation period of a suspected drunk driver does not require an officer to stare continuously with unbroken eye contact at the suspect for twenty minutes. *See* Code of Maryland Regulations 10.35.02.08(G). It is reasonable to permit officers to use numerous senses to observe whether an individual drinks, eats, smokes, or puts something in his or her mouth prior to the administration of a breath test.

**STATE COMAR REGULATIONS – COMPLIANCE – ADMISSIBILITY OF EVIDENCE**

Compliance with a COMAR regulation goes to the weight of the evidence, not the admissibility of the evidence. Defendants are given an opportunity to offer evidence that challenges the reliability of the results. If defendants provide "less compelling indicia of unreliability," then the judge has discretion to permit the evidence. At trial, the jury is permitted to disregard the evidence of a breath test if they believe it was not administered properly or if, in the administration of the test, the officers failed to comply with the COMAR regulations.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2316

September Term, 2019

_____

ALEXANDER DEJARNETTE

v.

STATE OF MARYLAND
_____

Leahy,
Shaw Geter,
Zarnoch, Robert A.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Zarnoch, J.
_____

Filed:  July 6, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In 2019, a Somerset County jury convicted Alexander Dejarnette ("Dejarnette") of driving under the influence of alcohol per se and driving while impaired by alcohol. Dejarnette was sentenced to one year incarceration, all but ten days suspended, and one year of supervised probation. Dejarnette presents one question for our review:

Did the trial court err in admitting evidence of the breath test results?

For the reasons set forth below, we affirm the circuit court.

## BACKGROUND & PROCEDURAL HISTORY

On April 6, 2019, State Trooper Derek Brown was driving and observed a vehicle change lanes without using a signal. Later, he saw the same vehicle slide onto the shoulder of the road and subsequently jerk back into the lane in front of his car, causing him to brake suddenly. Trooper Brown conducted a traffic stop at 1:59 a.m. on the vehicle, which Dejarnette was driving. Trooper Brown smelled alcohol emanating from the vehicle and saw that Dejarnette's eyes looked bloodshot and glossy. When Dejarnette exited the vehicle, Trooper Brown smelled alcohol on his breath. Dejarnette admitted to having some drinks hours earlier. Trooper Brown conducted field sobriety tests with Dejarnette and determined that he exhibited numerous signs that he was under the influence of alcohol. Trooper Brown arrested Dejarnette at 2:12 a.m. for suspected driving under the influence of alcohol. After the arrest, Trooper Brown searched Dejarnette's mouth and pockets. He handcuffed his hands behind his back and placed him in the front passenger seat of the police car.

Trooper Brown and Dejarnette arrived at the Princess Anne barracks at 2:21 a.m. Upon arriving, Trooper Brown secured his weapon in the vehicle's safe, then escorted Dejarnette in the back door. They were met by Sergeant George Todd, the duty officer at the barracks. Trooper Brown conducted another search of Dejarnette in Sergeant Todd's presence. Trooper Brown did not find anything in Dejarnette's mouth, and placed the contents of his pockets in a plastic bag. Trooper Brown then escorted Dejarnette into the processing room down the hallway.

From 2:21 to 2:37 a.m., Trooper Brown and Dejarnette were together in the processing room, a small room approximately eight feet by ten feet with two chairs. Dejarnette was not handcuffed while he was seated in the processing room. Trooper Brown read the DR-15 Advice of Rights form[1] to Dejarnette, while Sergeant Todd was in and out of the processing room. At approximately 2:37 a.m., after reading the form, Dejarnette agreed to submit to an alcohol concentration test. At 2:43 a.m., Sergeant Todd began the breath test[2] in the presence of Trooper Brown. At no point in time between the arrest and the administration of the breath test did Trooper Brown witness Dejarnette eat, drink or smoke anything, or put anything in his mouth. Dejarnette blew into the breathalyzer twice: at 2:43 a.m. and at 2:47 a.m. Both times, the breath test detected .094% blood alcohol concentration.

---

[1] The DR-15 form is a standard form provided by Maryland's Motor Vehicle Administration that officers use to advise detained motorists of possible sanctions imposed as a result of a positive test result or refusal to take a test.

[2] Appellant refers to the breath test as an Intoximeter test, the brand name of the equipment used to administer the test. We will use the generic term for the test.

Prior to trial, Dejarnette filed a motion in limine arguing that the results of the breath test should be excluded at trial because the quality of the police observation of Dejarnette was insufficient. The court determined that both Trooper Brown and Sergeant Todd observed Dejarnette for twenty minutes prior to the administration of the breath test, and neither observed any behavior that would invalidate the test. The court concluded that the challenge to the compliance with the twenty-minute observation period, specified in an administrative regulation, see pp. 5-6 *infra*, went to the weight of the evidence, and was admissible at trial.

Dejarnette was acquitted of negligent driving and driving under the influence, but was convicted of driving under the influence of alcohol per se[3] and driving while impaired by alcohol.

This timely appeal followed.

**DISCUSSION**

Dejarnette contends that the court erred in admitting the breath test results; specifically, Dejarnette argues that the officer's failure to strictly comply with the twenty-minute observation period rendered the results inadmissible because it violated the requirements of Code of Maryland Regulations ("COMAR") 10.35.02.08(G). He also asserts that the record does not support a factual finding that the police officers complied with the COMAR regulation. The State responds that the court properly determined that compliance with a COMAR regulation with respect to observation of an individual before

---

[3] Driving under the influence of alcohol per se means an individual has a blood alcohol concentration of .08% or above.

administering the breath test goes to the weight of the evidence, not the admissibility of the evidence, at trial.

> I. The statute is unambiguous and does not require compliance with the COMAR regulation twenty-minute observation period as a condition to the admissibility of evidence

Though Dejarnette maintains that this case hinges on whether the court erred in admitting evidence, the crux of this case is the interpretation of Title 10, Subtitle 3 of the Courts and Judicial Proceedings Article of the Maryland Code § 10-309(a)(1)(ii)[4] and whether it requires compliance with COMAR regulations in order for evidence of a breath test to be admissible at trial. This Court reviews *de novo* the interpretation of a statute and "provides judicial deference to the policy decisions enacted into law by the General Assembly." *Johnson v. State*, 467 Md. 362, 371 (2020) (Internal citation omitted). "We assume that the legislature's intent is expressed in the statutory language and thus, our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly." *Id*.

**Relevant Statutory Text**

Dejarnette was charged with violations of Transportation Article sections 21-901.1, negligent driving, and 21-902, driving under the influence of alcohol. Title 10, Subtitle 3 of the Courts and Judicial Proceedings Article of the Maryland Code governs the use of chemical tests for blood alcohol content, stating that "[i]n a prosecution for a

---

[4] Section 10-309(a)(1)(ii) states that "[e]vidence of a test or analysis provided for in this subtitle is not admissible in a prosecution for a violation of … § 21-902 of the Transportation Article … if obtained contrary to the provisions of this subtitle."

violation of a law concerning a person who is driving … a vehicle in violation of … § 21-902 of the Transportation Article, … a test of the person's breath or blood may be administered for the purpose of determining alcohol concentration of the person's blood." Md. Code Ann., Cts. & Jud. Proc. § 10-302. The statute imposes numerous requirements for the administration of the breath test. The statute requires the administration of the breath test "within 2 hours after the person accused is apprehended." Cts. & Jud. Proc. § 10-303(a)(2). The statute also requires the breath test to be administered by a "qualified person with equipment approved by the toxicologist under the Postmortem Examiners Commission at the direction of a police officer," though the arresting officer is not permitted to administer the breath test. Cts. & Jud. Proc. § 10-304(b).

To admit the results of the breath test at trial, the breath test report must comply with the following requirements: "[i]dentify the technician or analyst as a 'qualified person' as defined in § 10-304 of this subtitle;" "[s]tate that the test was performed with equipment approved by the toxicologist under the Postmortem Examiners Commission at the direction of a police officer;" and "[s]tate that the result of the test is as stated in the report." Cts. & Jud. Proc. § 10-306(a)(2). Evidence of a breath test in a prosecution for § 21-902 is inadmissible "if obtained contrary to the provisions of this subtitle." Cts. & Jud. Proc. § 10-309(a)(1)(ii).

The Postmortem Examiners Commission adopted COMAR regulations for the testing procedures required for evidentiary tests of breath for alcohol. The COMAR regulation states that "[f]or at least 20 minutes before a breath sample is taken," an individual is not permitted to eat, drink, smoke, or have any foreign substance in the

-5-

mouth. Md. Code Regs. 10.35.02.08(G). Prior to taking the breath sample, "the individual shall be observed and mouth checked." *Id*. The individual may be observed by the breath test operator, law enforcement personnel, or a combination of both. *Id*. The COMAR regulation does not provide requirements for how an individual is to be observed, nor does it define "observe."

### Plain Language of the Statute

Both parties agree that § 10-309 acts as a statutory exclusionary rule because evidence of the breath test is inadmissible "if obtained contrary to the provisions of this subtitle." Cts. & Jud. Proc. § 10-309(a)(1)(ii). From this starting point, Dejarnette alleges that, based on the language of this statute, strict compliance with related COMAR regulations is required for the breath test to be admissible, including the twenty-minute observation period. Dejarnette maintains that "where the State seeks to admit the results of a breath test but fails to establish compliance with the observation period, the test results are inadmissible." The State asserts that Dejarnette's interpretation of the statute requires reading additional language into the statute to read: "Evidence of a test or analysis provided for in this subtitle is not admissible in a prosecution … if obtained contrary to the provisions of this subtitle *and all relevant COMAR provisions*." (emphasis added). [5]

---

[5] To the extent Dejarnette seeks to fashion a textual argument from the language of § 10-309(a)(1)(ii), it is an extremely thin reed. The word "subtitle" would have to include regulations, the Court of Appeals has said were issued pursuant to § 10-304, *Krauss v. State*, 322 Md. 376, 381 (1999), not § 10-309. The more likely reading of this statute is

(Continued…)

The statutory construction analysis commences "with the plain language of the statute." *Johnson v. State*, 467 Md. 362, 372 (2020) (Internal citations and quotations omitted). "If the language is clear and unambiguous, we ordinarily need not look beyond the statute's provisions and our analysis ends." *Opert v. Criminal Injuries*, 403 Md. 587, 593 (2008) (Internal citations and quotations omitted). Section 10-309 is clear that for a breath test to be admissible as substantive evidence, the State must comply with statutory requirements in the subtitle, including the two-hour time limit to administer the test, the required information necessary to be included in the report, and the limitations on who can administer the breath test. *See* Cts. and Jud. Proc. §§ 10-303(a)(2), 10-306(a)(2), 10-304(b). The subtitle does not include in its text a requirement of strict compliance with related COMAR regulations, nor does its language require a twenty-minute observation period prior to the administration of the breath test. The plain language of the statute is unambiguous with the enumerated requirements for the admissibility of the breath test.

The Court of Appeals has held that "the Legislature is presumed to have meant what it said and said what it meant." *Md. Overpak Corp. v. Mayor and City Council of Balt.*, 395 Md. 16, 48 (2006) (Internal citations and quotations omitted). The Legislature was explicit as to the statutory requirements to admit the breath test as substantive evidence at trial, and the requirements do not include strictly satisfying the COMAR regulation that Dejarnette relies on. We note that the Legislature is capable of imposing time limitations. In fact, the Legislature has imposed a time limitation as a condition of

"subtitle" refers to the express statutory requirements, not some dictates administratively promulgated after the enactment.

-7-

the admissibility of the breath test by requiring the administration of the breath test within two hours of apprehension. *See* Cts. and Jud. Proc. § 10-303. We decline to read additional language into the statute.

In the alternative, Maryland courts have held that the violation of a State regulation "does not trigger the exclusionary rule." *McFarlin v. State*, 409 Md. 391, 410 (2009) (explaining that the exclusionary rule only applies to violations of the Fourth Amendment to deter illegal searches and seizures). Though the Fourth Amendment exclusionary rule is not applicable in the present case, the principle is the same – the violation of a State regulation that posits a twenty-minute observation period prior to the administration of a breath test does not result in the breath test being inadmissible evidence that must be excluded at trial. Additionally, even if this COMAR regulation imposes a requirement on the police officers in the method of administering the breath test, it is not a mandatory requirement with consequences for failure of strict compliance.

### Other Jurisdictions

Dejarnette states that twenty-one states have held that non-compliance with an observation period results in the inadmissibility of the breath test. Sixteen states, according to Dejarnette, impose the requirement of an observation period before administering a breath test in a regulation. Two states require an observation period derived from the breathalyzer machine's operating manual, and three states require an observation period derived from case law. Of particular note, Dejarnette concedes that of the sixteen states in which regulations govern the observation period, some have statutes that require compliance with regulations on the admissibility of the breath test.

-8-

Other jurisdictions have adopted a less demanding definition of what qualifies as an "observation" prior to the administration of a breath test. West Virginia's relevant state rule requires the officer to "keep the person being tested under constant observation for a period of twenty minutes before the test is administered," however, despite using the term "constant," the West Virginia Supreme Court determined the regulation "does not limit the period of constant observation to 'constant visual observation,'" and the officer is capable of ensuring there is nothing in the individual's mouth "without fixedly staring at the person for the entire twenty-minute period." *Reed v. Hill*, 770 S.E.2d 501, 512 (W.Va. 2015) (citing W. Va. Code St. R. § 64-10-7.2(a)). Illinois' Administrative Code requires an employee to "continuously observe the subject for at least 20 minutes," prior to administering the breath test, but the Illinois intermediate appellate court held that requiring "exclusive unbroken visual observation is contrary to its ordinary meaning" and is practically impossible. *People v. Chiaravalle*, 23 N.E.3d 633, 639 (Ill. App. 2014) (citing 20 Ill. Adm. Code 1286.310(a) (2004)).

There are other jurisdictions that require less than a twenty-minute observation period, suggesting a shorter period of observation is sufficient for the purpose of administering a valid breath test. Utah case law requires only fifteen minutes of observation prior to the administration of a breath test. *See State v. Relyea*, 288 P.3d 278, 287 (Utah App. 2012). Missouri, Idaho, Connecticut and Alaska also require only a fifteen-minute observation period. *See Vanderpool v. Dir. of Revenue*, 226 S.W.3d 108, 110 (Mo. 2007) (15-minute observation period); *State v. Charan*, 971 P.2d 1165, 1166 (Idaho App. 1998) (15-minute observation period); *State v. Smith*, 547 A.2d 69, 73

(1988) (Conn. App. 1988) (15-minute observation period); *Webster v. State*, 528 P.2d 1179 (Alaska 1974) (15-minute observation period).

Dejarnette cites to *State v. Scheffert*, a Nevada case where state regulations require a fifteen-minute observation period. 778 N.W.2d 733, 737 (2010). Dejarnette believes that this case supports his argument that non-compliance with a regulation imposing an observation period results in the inadmissibility of the test. Scheffert was pulled over due to a broken headlight and upon review of his license, the officer learned there was an outstanding warrant for his arrest. *Id*. at 736. After his arrest, the officer noticed an odor of alcohol and administered a preliminary breath test. *Id*. at 737. Based on the results of the preliminary breath test, the officer administered a chemical breath test which showed Scheffert was above the legal limit of alcohol consumption. *Id*. Scheffert filed a motion to suppress, claiming the preliminary breath test was inadmissible because "the administration of the [preliminary breath test] was not sufficiently reliable" because the officer failed to follow regulations and observe Scheffert for the requisite fifteen minutes prior to administering the test. *Id*. The court determined:

> [W]hen an officer is required to observe a person before administering a test, the officer need not stare fixedly at the person being tested for the specified period of time in order to satisfy the observation requirement, but must remain in the person's presence and be aware of the person's conduct.

*Id*. at 741 (Internal citations and quotations omitted). The court held that the officer must "be in a position to detect, through the use of one or more senses, any conduct or event which could contaminate the breath sample and taint the results." *Id*. The court concluded

that the arresting officer met this condition by remaining in Scheffert's presence for the duration of the fifteen-minute period. *Id.*

**Separation of Powers**

Article 8 of the Maryland Declaration of Rights sets forth the Separation of Powers Doctrine, requiring "[t]hat the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other." Maryland courts have held that "it is not the proper function of an administrative official or agency in the executive branch of government to decide whether a plaintiff or potential plaintiff has standing to maintain an action in court." *Sugarloaf Citizens' Ass'n v. Dep't. of Env.*, 344 Md. 271, 289-89 (1996). We think a similar inhibition might apply to an agency attempt to unilaterally impose an exclusionary rule applicable to a judicial proceeding.

The Doctrine of Separation of Powers "does not itself inhibit the delegation to an administrative agency of a blend of executive or legislative powers with powers judicial in nature[;]" however, where the power is not expressly delegated or the regulation does not expressly provide, it is improper to imply authority from the regulation. *Cnty. Council for Montgomery Cnty. v. Investors Funding Corp.*, 270 Md. 403, 436 (1973). The power to determine whether evidence is admissible appears to lie with a court or the legislature; an executive agency would not likely be authorized to determine what evidence is

admissible in court, nor could it unilaterally create an exclusionary rule in a regulation that is binding on a court.[6]

  II.  The record supports a factual finding that the officers complied with the observation period

Dejarnette next contends that the record does not support a factual finding that the police complied with the COMAR regulation. The Nebraska court in *Scheffert* is instructive – the term "observe" does not require an officer to "stare fixedly" for the duration of the observation period. It is unreasonable to require continuous, unbroken observation for twenty minutes. Officers may use numerous senses to observe an individual to ensure they do not eat, drink, smoke, or put something in their mouth.

The record showed that forty-six minutes elapsed between the time Dejarnette was stopped and the time his breath sample was taken, and thirty-three minutes between the time he was arrested and the time the breath sample was taken. During those thirty-three minutes, Trooper Brown was close enough to Dejarnette to observe whether he ate, drank, or smoked. At the time of arrest, Trooper Brown checked his mouth and pockets before he was handcuffed and placed in the police car. He was then transported to the barracks where they were met by Sergeant Todd and a second search was conducted. For the next sixteen minutes, Trooper Brown and Dejarnette were in a small room where

---

[6] Separation of Powers concerns were not raised by either side in this case, nor do we resolve any Separation of Powers issue. We mention it only in our discussion of our interpretation of the COMAR regulation and its likely reach – an issue plainly before this Court.

Trooper Brown read the Advice of Rights form, and shortly thereafter conducted the breath test.

Trooper Brown testified that Dejarnette was handcuffed and his mouth was empty when he placed him in the car, and during the drive to the barracks and in the room, he did not smoke, have anything to drink, or put anything in his mouth. Trooper Brown also testified that he did not hear or smell him belch or vomit. Sergeant Todd also testified that he did not see Dejarnette put anything in his mouth while he was in his presence.

Additionally, Dejarnette asserts that the test could have been invalid because Trooper Brown would not know whether Dejarnette belched, stating "[b]ecause belching is commonly seen as rude, it is possible that Mr. Dejarnette would have attempted to conceal a belch and that Trooper Brown would not have noticed it." The regulation does not include a concern that someone may have belched or regurgitated something that would invalidate the test. Moreover, the two identical breath test readings over the twenty-minute period suggests that nothing had changed with respect to Dejarnette's ingestions. The record clearly supports a factual finding that the officers complied with the COMAR regulation requiring a twenty-minute observation period prior to the administration of the breath test.

III.  The court made factual findings on the record that the officers sufficiently complied with the regulations

Dejarnette contends that the court failed to make a factual finding that the police officers sufficiently complied with the COMAR regulations. Dejarnette cites Maryland Rule 4-252(g), requiring the court to state findings on the record "if factual issues are

-13-

involved in determining the motion." As Dejarnette failed to object or raise this issue below, the argument is not preserved. Nevertheless, the circuit court made explicit factual findings that the police adhered to the twenty-minute observation period required by the COMAR regulation. The court explained that "during the 22 minutes, we've got two people, a combination of two people, that are making observations. And neither one observed a belch, a vomit, a stick of gum, a cigarette, anything to the contrary that would invalidate the test." The court summarized the sequence of events that occurred while the officers were watching Dejarnette, including arresting him, putting him in the car, driving him, taking him out of the car, searching him again, then taking him down to the room, finding that "presumably, they're in close proximity to you, … and you can observe whether they've belched or vomit, the same as you can in a room." The circuit court satisfied the requirement of Rule 4-252(g) by making explicit findings on the record that the officers complied with the COMAR regulation.

IV.     Compliance with the twenty-minute observation period outlined in a COMAR regulation goes to the weight of the evidence, not the admissibility of the evidence

The circuit court determined that evidence of the breath test goes to the weight, not the admissibility, of the evidence at trial. The court explained that the jury instruction permits jurors to "disregard the test if they believe that it was not administered properly." Dejarnette relies on *Casper v. State* in arguing that the failure to comply with COMAR regulations goes to the admissibility of the evidence. 70 Md. App. 576 (1987).

Casper was subjected to a breath test after field tests suggested he was not sober. *Id.* at 579. The breath test indicated his blood alcohol concentration was .21%. *Id.* The

court determined that for breath test results to be admissible at trial, the State must demonstrate that: "(1) the test was administered within two hours of defendant's apprehension; (2) a qualified person administered the test; and (3) the State toxicologist approved the equipment … used to determine defendant's blood alcohol content." *Id*. at 591.

Casper asserted that his test was inadmissible because the equipment used was "of questionable accuracy." *Id*. at 583. Casper claimed that the equipment was tested nine months before his chemical breath test and only one percent of a compound used in the breath test was examined for accuracy. *Id*. The court rejected his argument because proof of random testing suggested the equipment met the required standards. *Id*. at 586. The court explained that Casper was "free to challenge the reliability with evidence tending to show that [the equipment] had changed since being certified." *Id*.

This Court recognized that defendants must be given an opportunity to offer evidence that challenges the reliability of the test results, and the results must be excluded if the evidence "compromises the reliability of the results that to admit them would deprive the defendant of a fair trial or due process." *Id*. at 591-92. However, "[l]ess compelling indicia of unreliability places the admissibility of chemical breath test results within the discretion of the trial judge." *Id*. at 592. Unlike Casper, Dejarnette offered no evidence to undermine the reliability of the test. The officers complied with the three requirements set forth by this Court in *Casper*, and Dejarnette failed to offer any competent evidence that he drank, smoked, ate, or regurgitated during the observation period. Speculation that something could have occurred that would compromise the test

is not compelling evidence that the test was unreliable. Dejarnette's contentions amount to "less compelling indicia of unreliability," and we agree with the circuit court that alleged compliance or noncompliance with the twenty-minute observation period goes to the weight of the evidence.

**JUDGMENTS OF THE CIRCUIT COURT FOR SOMERSET COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**